**STATE of Missouri, Respondent,**

v.

**Carl Eugene MOORE, Appellant.**

**No. 48270.**

Missouri Court of Appeals, Eastern District.

April 30, 1985.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Almond, Williams & Brady, M. Edward Williams, Hillsboro, for appellant.

GENE HAMILTON, Special Judge.

Appellant was charged in the Circuit Court of Jefferson County with one count of the Class D felony of incest, alleged to have occurred on November 14, 1982, and a second count of the Class B felony of rape, alleged to have occurred on February 5, 1983. The victim of both alleged offenses was a daughter of appellant. The appellant was convicted in a jury trial of the offense of rape but was acquitted of the offense of incest. Appellant appeals his conviction for rape.

The first trial of this cause resulted in a mistrial on September 1, 1983. One of the sisters of the victim testified, during redirect examination by the prosecutor, that appellant had made a statement to her that "If Carla is so hot for boys, I'm going to show her what its all about." A hearing was held in chambers and defense counsel moved for a mistrial on the ground that the prosecutor had not disclosed the statement. The mistrial was granted.

The appellant filed a motion to dismiss on grounds of former jeopardy on October 21, 1983. A hearing was held on that motion on October 31, 1983, and the trial court overruled the motion.

On November 2, 1983, the second trial commenced. The victim testified that on November 14, 1982, when she was 13 years old, the appellant had sexual intercourse with her in her bedroom. She further testified that the appellant warned her not to tell anyone, or she would be called a "slut" and would be disowned by her mother. The victim stated she didn't tell anyone because she was embarrassed but she did begin calling her sisters more frequently, asking for permission to come to their homes and spend time with their families.

The victim further testified that on February 5, 1983, when she was 14 years of age, appellant again entered her bedroom and asked if he could go to bed with her. She refused, but after a struggle, appellant did have sexual intercourse with the victim.

The victim stayed in her room until her mother arrived home from work. She and her mother went shopping that night and the victim told her mother about what had happened. The two of them went to the home of a sister of the victim, where another sister and brother-in-law were called. After telling the relatives what had happened, the victim went to the Arnold Police Station and was questioned. Subsequently, she was taken to a hospital for examination and a doctor took vaginal fluids and pubic hair samples.

At trial, Virginia Moore, appellant's wife and the victim's mother, testified, over objection, as to the events which transpired on February 5, 1983. She further testified that between November 14, 1982, and February 5, 1983, she observed the victim to be more withdrawn than usual and crying more often. She testified that on February 5, 1983, while shopping, the victim fidgeted with her coat, and cried all the way to the sister's house.

Three of the victim's sisters also testified at trial. They testified as to changes they had observed in the victim's behavior between November, 1982, and February, 1983, and as to their observations of interactions between the victim and appellant. One of the sisters also testified that appellant told her several times, after school started in 1982, that the victim needed to be on birth control pills.

Roger Corcoran appeared for the State as an expert witness, and testified as to the results of several tests he conducted on samples taken from the victim's vaginal fluid and from stains on the bedsheets, as well as pubic hair samples.

Appellant testified in his own behalf at trial and denied all allegations of any sexual activity with his daughter. He stated that he told one of his daughters that the victim should be taking birth control pills because he "figured she was having sexual relations".

In his first allegation of error, appellant contends that the trial court erred in allowing his wife to testify over his objection.

Appellant argues that such testimony does not fall within any recognized exception to the statute which forbids such testimony.

A spouse was not a competent witness under the common law, regardless of whether the testimony was to be for or against the non-witness spouse. The reasons for the common law disqualification are set forth by the Missouri Supreme Court in *State v. Kollenborn*, 304 S.W.2d 855 (Mo. banc 1957) at page 859:

"This disqualification was based upon: (a) the supposed public policy of promoting and preserving domestic harmony; (b) the strong 'repugnance' against seeing a person convicted by the testimony of one 'sharing the secrets of his domestic life and living under his roof' (Vol. 8, Wigmore on Evidence, 3d Ed., § 2227, p. 222, § 2228, p. 224, 225); and (c) because of the temptations to perjury (*State v. Willis*, 119 Mo. 485, 24 S.W. 1008)."

*Section 546.260* RSMo removes the common law disability that precluded one spouse from ever testifying against another. However, under that statute a spouse remains an incompetent witness against a defendant spouse, at the option of the defendant spouse.

Appellant concedes that, under the common law rule of incompetency, an exception developed whereby a spouse was permitted to testify if the defendant spouse had committed or attempted to commit an act of violence on the witness spouse. Appellant further concedes that such exception has been extended to a spouse testifying when her small child was the victim. *State v. Kollenborn, supra; State v. Brydon*, 626 S.W.2d 443 (Mo.App.1981). However, appellant contends that the exception should not apply to the spousal testimony in this case since the victim here was old enough to testify and did in fact testify, and there was no necessity for the wife's testimony. This court does not agree.

■■ Courts of this state have regularly allowed spousal testimony when the allegation is a criminal act against the child of the witness spouse. This exception to the common law should not be limited by the age of the child nor the necessity of the situation. *Section 546.260* RSMo did not create new disabilities that did not exist under the common law, and any exception under the common law still exists.

■ The reasons for declaring a spouse incompetent as a witness at common law are no longer valid when the victim is a child of the witness spouse, and the witness spouse desires to testify. There can be no hope left of "domestic harmony" and there will be no public "repugnance" on one being convicted by spousal testimony. Thus, the trial court was correct in allowing appellant's wife to testify since her child was the alleged victim.

Appellant's second point is that the court erred in allowing the expert witness Roger Corcoran to testify concerning chemical tests performed by him. Appellant contends that: 1) the witness was not sufficiently qualified; 2) the tests for presence of seminal fluid were based on studies not generally accepted in the scientific community as definitive evidence; and 3) the witness' testimony that the test results were positive was not based on substantial factual evidence.

■ To qualify as an expert witness, the witness must be shown to have sufficient experience with the subject matter. *State v. Rhone*, 555 S.W.2d 839 (Mo. banc 1977). In this case, the evidence was that Roger Corcoran held a Bachelor's Degree in Chemistry, and had received training at the Regional Crime Laboratory at Southeast Missouri State University in the area of sexual assault. He had received the same type training in his previous job as a criminologist for St. Louis County, Missouri. At the time of trial Mr. Corcoran had 10 years experience as a criminologist and had held his present position for three and one-half years. His experience had included preparing slides of vaginal swabs and stains and examining the slides for the presence of spermatozoa and blood-typing.

■ Whether a witness qualifies as an expert rests with the discretion of the trial

court and will not be disturbed in the absence of a showing of abuse. *State v. Smith,* 637 S.W.2d 232 (Mo.App.1982). There is no showing of any abuse of discretion in allowing the expert witness to testify in this case.

The appellant argues that the scientific principles upon which the enzyme tests are based are not generally acceptable in the scientific community as definitive evidence of the presence of seminal fluid. Appellant offers no authority which suggests or supports such an assertion. Further, there was evidence that these tests were, in fact, generally accepted in the scientific community and were employed by other crime laboratories. They had been endorsed by the American Academy of Forensic Scientists and the American Academy of Forensic Science Business.

 It is the general rule that "[E]xpert opinions based on scientific tests are admissible if the scientific principle involved is generally considered by the scientific community as reliable." *State v. Williams,* 659 S.W.2d 309 (Mo.App.1983). There is sufficient evidence to establish such generally accepted reliability in this case.

 Appellant has also objected to the manner in which the analysis was conducted and to the specific test results. However, such objection goes to the weight and not the admissibility of the evidence. *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976).

Appellant's final point is that the court erred in overruling his motion to dismiss on grounds of former jeopardy. He alleges that the mistrial was caused by prosecutorial misconduct in deliberately eliciting an undisclosed statement of appellant during the first trial.

One of the victim's sisters was on the witness stand at the first trial when said statement was elicited:

"Cross Examination by defense attorney:

Q. Did he tell you he was concerned that he believed that *(victim)* was sexually active?

A. Yes.

Q. Thank you. No further questions.

Redirect examination by the prosecutor:

Q. Did the defendant make any further statements to you about what he was considering doing, based on these, perhaps, beliefs that she was 'sexually active'?

A. He was standing in front of my refrigerator in the kitchen one day, and I was sitting at the counter, and he said to me: 'If *(victim)* is so hot for boys, I'm going to show her what its all about.' "

Appellant moved for a mistrial and it was granted. Later appellant's motion to dismiss on grounds of former jeopardy was overruled.

 In *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267–273 (1976), the U.S. Supreme Court held that the double jeopardy clause protected a defendant against governmental actions "intended to provoke mistrial requests" and retrials where "bad faith conduct by judge and prosecutor" threatened the " '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." Since the *Dinitz* case, the Missouri courts have established a general rule that when a defendant requests a mistrial, any constitutional basis to retrial is eliminated. Simple prosecutorial error will not commonly be the basis for dismissal. *State v. Harrold,* 626 S.W.2d 260, 261 (Mo. App.1981). A defendant is required to prove the prosecutor's conduct erroneous and that his action was taken to coerce the defendant to request a mistrial. *State v. Harrold, supra;* and *State v. Gaskin,* 618 S.W.2d 620 (Mo.1981).

 In a 1982 U.S. Supreme Court decision, *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 424 (1982), the Court stated as follows: "[W]e do hold that the circumstances under which a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in

which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."

In the instant case, the record does not reveal any bad faith prosecutorial misconduct intended to harass the appellant. Nor is there any showing that the appellant was provoked into requesting a mistrial. All that is in the record is "simple prosecutorial error" followed by appellant's request for mistrial. Such request was promptly granted by the trial judge and no error was committed by the trial judge's denial of appellant's motion to dismiss.

The judgment is affirmed.

All concur.

SIMON, P.J., and STEPHAN, J., concur.