STATE of Missouri, Respondent,

v.

Lynn A. BROWN, Appellant.

No. WD 40668.

Missouri Court of Appeals,
Western District.

Feb. 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1989.

Application to Transfer Denied
May 16, 1989.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

NUGENT, Presiding Judge.

Defendant Lynn A. Brown appeals from the judgment entered following a jury verdict finding him guilty of tampering in the first degree. The trial court sentenced him to eight years imprisonment as a persistent offender. He argues on appeal that his arrest occurred illegally and that the Double Jeopardy Clause of the Fifth Amendment barred his second trial following a mistrial. We affirm the judgment and conviction.

At approximately 2:30 a.m. on January 20, 1988, Officer Michael Daugherty saw the defendant driving a black 1988 Pontiac Bonneville in a residential neighborhood. He noticed that the car bore a dealer's tag. Kansas City Municipal Ordinance 34.290

prohibits the personal use of automobiles bearing such license plates. Because of the late hour and the use of the car in a residential neighborhood, Officer Daugherty determined that he had discovered a possible violation of the Kansas City ordinance. Officer Daugherty testified that he regularly worked the midnight shift and that he had issued citations for improper use of a dealer's tag on several other occasions.

As he approached the car, Officer Daugherty noticed the broken right rear window of the car. He asked the defendant for a driver's license. Mr. Brown told the officer that he had neither a license nor any other identification with him. He gave his name as James W. Osler. Officer Daugherty then placed him under arrest for driving without an operator's license in violation of § 302.020 and for violating Kansas City Ordinance 34.290.

The police impounded and inventoried the Bonneville. Officer Timothy Shanks contacted New Plaza Pontiac, the dealer who owned the Bonneville. Larry McGill, their sales manager, reported at that time that the automobile had been stolen. Officer Shanks then contacted the defendant concerning the theft. He gave the *Miranda* warnings and the defendant initially asserted his right to silence. Later, however, he told the officer, "How can you charge me with auto theft? A friend stole the car and he gave it to me to take my girlfriend home."

Mr. Brown's first trial commenced on March 21, 1988. During that trial the prosecution's direct examination of Officer Shanks produced the following exchange:

Q. And did you then interview Mr. Brown?

A. I subsequently interviewed him, yes.

Q. Did you read his rights to him?

A. I advised him of his rights, yes, sir.

. . . .

Q. Did he make a statement after that to you?

A. He stated he didn't want to talk to me.

Defense counsel then objected and moved for a mistrial. The trial court granted the mistrial and excused the jury.

The next day, March 23, 1988, the parties appeared for a new trial. The defendant moved to dismiss, arguing that a second trial, following the mistrial of the previous day, would subject him to double jeopardy. The court overruled the motion and the trial proceeded before the jury. From his conviction at that trial the defendant now appeals.

The defendant argues in his first point that the court erred by admitting testimony about his arrest and information obtained after that, including his statement to the police. That testimony should have been excluded, he argues, because his arrest took place without probable cause, in violation of the Fourth Amendment.

■ The defendant contends that, because Officer Daugherty did not have specific knowledge that the automobile dealership was closed when he observed the dealer's tag, he had no reason to believe that the defendant had committed a violation of the Kansas City license ordinance and, therefore, no reason to stop his car. The defendant cites *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968), for the standard by which we must judge the police officer's conduct—that is, before he stopped the car, Officer Daugherty must have had a reasonably articulable suspicion that the defendant was engaged in criminal conduct. His argument suggests, however, that the officer must know with absolute certainty that a violation has occurred before the stop. We disagree.

A correct application of the *Terry* standard to this record, however, can support but one conclusion: that Officer Daugherty acted properly. The city ordinance prohibits non-business use of a vehicle bearing a dealer tag. The officer saw the car, not in a business district, but in a residential area. He testified that he did not know what dealer owned the automobile, but he knew of no dealers open at 2:30 a.m., the time he stopped the defendant. Because he regularly worked the late shift he had on several other occasions stopped vehicles for the same violation. Based on his experience, the car's location, and the late hour, Officer Daugherty had reasonable grounds to believe that he had witnessed a violation of

the municipal ordinance. Therefore, he had reason to stop the automobile for that infraction.

[redacted] After the stop, circumstances warranted Officer Daugherty's further action. He requested an operator's license and the defendant was unable to produce one. In fact, he could produce no identification. Officer Daugherty, therefore, had probable cause to arrest the defendant for a violation of § 302.010(2) (operation of a motor vehicle without a valid license). *See also* § 302.181.3 (failure to exhibit a valid driver's license on request is presumptive evidence that driver is not duly licensed); *State v. Eaton,* 504 S.W.2d 12, 19 (Mo. 1973) (applying § 302.181.3). Accordingly, because probable cause supported both the stop of the defendant and his subsequent custodial arrest, the evidence obtained thereafter was admissible.

[redacted] In his second point the defendant contends that his second trial, following a defense-requested mistrial, subjected him to double jeopardy in violation of his Fifth Amendment rights. He concedes that a mistrial granted at the defendant's request will usually not bar subsequent prosecution for the same offense. *See Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *State v. Moore,* 690 S.W.2d 453, 457 (Mo.App.1985). He points out, however, that when prosecutorial misconduct "goads" the defendant into requesting a mistrial, double jeopardy principles will operate to provide the defendant with relief. *See Oregon v. Kennedy, supra,* 456 U.S. at 673, 102 S.Ct. at 2088, *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976).

Mr. Brown argues that the prosecutor coerced his mistrial request by eliciting testimony from Officer Shanks that he had exercised his right to remain silent. We disagree. The United States Supreme Court has held that the defendant must show that the prosecution engaged in misconduct with the intent to provoke a mistrial. *See Oregon v. Kennedy, supra,* 456 U.S. at 679, 102 S.Ct. at 2091. Here, however, the witness' remark occurred inadvertently during a course of questioning that was designed to elicit testimony concerning what the defendant had said following his arrest, not what he had not said.[1] Because the prosecutorial error in this case occurred inadvertently, it must follow that the prosecutor did not act with an intent to provoke a mistrial. Therefore, we conclude that the second trial following his mistrial did not violate Mr. Brown's right to be free from double jeopardy. *See Oregon v. Kennedy, supra,* (no intent found when prosecutor asked a witness if the defendant was a "crook"); *State v. Moore,* 690 S.W.2d 453, 458 (Mo.App.1985) (no intentional error when the prosecution elicited from witness previously undisclosed statement); *State v. Harrold,* 626 S.W.2d 260, 261 (Mo.App.1981) (no intent when prosecutor accused defendant's brother of lying on the witness stand).

Accordingly, we affirm the judgment and conviction.

All concur.

[redacted]

1. In previous decisions, Missouri courts have found such inadvertent references to post-arrest silence not to amount to prejudicial error. *See e.g., State v. Mitchell,* 693 S.W.2d 155, 161 (Mo. App.1985); *State v. Harper,* 637 S.W.2d 342, 345 (Mo.App.1982).