UNITED STATES of America, Appellee,

v.

**Ted Jay HILL, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Darrell L. FRAZIER, Appellant.**

**Nos. 83–1752, 83–1797.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1984.

Decided March 28, 1984.

Rehearing Denied May 1, 1984.

---

Raymond C. Conrad, Jr., Federal Public Defender, W.D. Mo., Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., for appellant in No. 83–1752.

Willard B. Bunch, Campbell, Erickson, Cottingham, Morgan & Gibson, John Edward Cash, Kansas City, Mo., for appellant in No. 83–1797.

Robert G. Ulrich, U.S. Atty., David C. Jones, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before HEANEY, BRIGHT and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Ted J. Hill and Darrell L. Frazier appeal from their convictions for possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982). They contend that the district court erred in failing to suppress evidence seized from Frazier's residence in Vernon County, Missouri. We reverse Hill's conviction, but affirm Frazier's conviction.

## I. FACTS.

The facts as found by the district court on the defendants' motions to suppress are as follows: On October 13, 1982, Corporal Jack Merritt of the Missouri State High-

way Patrol obtained a warrant to search a 171-acre farm in Vernon County, Missouri, for marijuana growing outdoors on the premises. A team of state and federal agents assembled that same day to execute the warrant led by FBI Special Agent William Castleberry. The agents arrived at the farm in several cars at approximately 6:50 p.m. Castleberry, DEA Special Agent Steve Casteel, and Missouri State Highway Patrol Trooper Gary Zink rode in the lead car, which parked on the west side of a small house located on the farm.

Castleberry and Casteel exited the car and approached the house on foot. As they did so, Frazier came out of a sliding glass door on the west side of the house and met them. Castleberry identified himself and showed Frazier the search warrant. He asked Frazier if anyone else was in the house and Frazier replied, "Ted." Castleberry instructed Frazier to call Ted out, but Frazier hesitated. Casteel then approached the sliding glass door and yelled for Ted. A voice replied from the kitchen just to the right of the doorway. At the same time, Casteel observed a pistol on a bookcase across from the sliding glass door. He immediately entered the house and turned to find Hill in the kitchen frying chicken. Castleberry stepped into the living room behind Casteel to back him up. When they entered the house, both Casteel and Castleberry observed some bright orange-handled scissors and what appeared to be cut marijuana on a round tray resting on the floor of the living room. They also observed several weapons, besides the pistol first viewed by Casteel, throughout the room.

Casteel identified himself to Hill, explained the purpose of the search, and asked him to come outside. Hill cleaned the flour from his hands and accompanied Casteel out the door. Castleberry backed out of the house in front of the two. Once outside, the agents asked Hill and Frazier several questions and began the search for growing marijuana. Castleberry instructed some agents to seize the contraband and evidence viewed in the house and to check the weapons on the bookcase and else-

where in the living room. A serial number check through the National Crime Identification Computer revealed that the .38 caliber Smith and Wesson airweight revolver found on the bookcase had been stolen. In addition, Trooper Zink noticed that Hill and Frazier, particularly Hill, matched the descriptions of individuals who had committed an armed robbery with a .38 caliber revolver just days before in Nevada, Missouri. State and federal agents went inside the living room several times with Hill and Frazier to escape the night chill and to discuss matters with them while other agents found, took samples from, and destroyed thirteen marijuana plants growing in a dried pond bed on the farm.

One and a half to two hours after the search began, state agents placed Hill and Frazier under arrest as suspects in the Nevada armed robbery. The house was locked by placing a bar across the sliding glass door from the inside and exiting through another door. Frazier apparently retained the keys to the residence once secured. As the whole group prepared to leave, Missouri State Highway Patrol Corporal Don Richardson told Hill that he was going to jail and asked if he would like to take anything with him. Hill responded that he would like to take some personal items, so the agents requested Frazier to unlock the residence and remove the bar from the sliding glass door. Frazier had no objections and let the group into the house again.

Richardson followed Hill through the living room into a bedroom in the back of the house. Other agents followed the pair. As Richardson and Hill entered the bedroom, Richardson observed an open box of marijuana in the middle of the room. Hill denied any connection with the box. Richardson also saw a closed suitcase approximately ten feet to their right and asked Hill if it belonged to him. Hill replied affirmatively and Richardson immediately walked over to the suitcase. With Hill approximately five feet away, Richardson opened the suitcase and found among Hill's clothes a set of scales, a device to seal

plastic bags called "Seal-A-Meal," and a book entitled *Marijuana Grower's Guide.* These items are associated with the growth and preparation of marijuana for distribution. Richardson also observed an open boot box near the dresser containing another round tray, termed a "marijuana cutting tray," and some loose and packaged marijuana. The agents seized all these items and took Hill and Frazier away. Hill apparently took no personal items with him to jail as a result of this final entry.

## II. PROCEEDINGS BELOW.

On November 4, 1982, a federal grand jury indicted Frazier for illegal possession of marijuana with the intent to distribute. Frazier filed a motion to suppress all of the evidence seized inside and outside his residence. The district court denied the motion except as to the .38 caliber revolver, holding that the agents had illegally seized the gun to check its serial number before they had probable cause to believe that it was stolen. On January 20, 1983, the court declared a mistrial because the jury could not reach a verdict.

On January 25, 1983, the grand jury issued a superseding indictment against both Frazier and Hill, alleging in two counts that they conspired to and did individually possess marijuana with the intent to distribute. Both defendants moved to suppress the items seized on October 13, 1982, but the court adhered to its earlier ruling and admitted all evidence save the pistol. A jury convicted Hill and Frazier for possession of marijuana with the intent to distribute. Both men appeal. We consolidated the cases for oral argument and disposition.

## III. HILL'S APPEAL.

■ Hill contests the admission of the items seized from the living room of the house prior to his arrest and the items taken from his suitcase and the back bedroom after that arrest. We hold that Richardson illegally searched the suitcase after Hill's arrest and illegally seized the evidence from it. This evidence was critical to

connect Hill with the marijuana found elsewhere on the Frazier farm. Therefore, we reverse Hill's conviction on this ground.

We have carefully reviewed the record and hold that the subsidiary factual findings made by the district court are not clearly erroneous, although we are gravely troubled by some contradictions in the testimony of law enforcement personnel which the court found credible. *See United States v. Bruton,* 647 F.2d 818, 822 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). For example, we find it difficult to believe that Hill would have asked to return to a bedroom so fertile with evidence of his involvement in drug violations. Moreover, the law enforcement agents' purported reason to reenter Frazier's residence—to gather personal items which Hill wanted for his trip to jail—pales in the face of the agents' inability to point to one such item retrieved on that reentry. The only items taken from the bedroom were some marijuana, marijuana paraphernalia, and a semiautomatic AR–15 rifle—hardly items accessible to or desired by Hill for his trek to the Vernon County Jail. Nevertheless, we accept the credibility determinations made by the district court regarding Hill's request to reenter the house and the agents' purpose in allowing him to do so.

The district court decided that, because Hill and Frazier consented to Richardson's presence in the bedroom, Richardson could search the suitcase prior to letting Hill take it to jail or retrieve personal items from it. *Cf. United States v. Ross,* 456 U.S. 798, 823, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982) (container carried at the time of arrest often may be searched without a warrant or suspicion about its contents); *Washington v. Chrisman,* 455 U.S. 1, 6, 9, 102 S.Ct. 812, 816, 818, 70 L.Ed.2d 778 (1982) (officer may accompany arrestee to dormitory room after arrest and seize evidence in plain view therein). We cannot from this record, however, accept the court's leap of inferences that Hill's request for personal items somewhere in the house allowed Richardson to conduct a pro-

tective search of his suitcase. At the suppression hearing on April 11, 1983, Richardson testified, "I asked Mr. Hill if that was his suitcase, he said yes. I bent down and opened it without asking his permission. * * * I was concerned about my safety first of all and I wanted to be sure that there were no other stolen weapons that Mr. Hill could get." Tr. at 178–179. On further questioning by the court, Richardson noted that he first pointed the suitcase out to Hill and went directly over to open it, with Hill approximately five feet away, after Hill admitted possession of it. *Id.* at 191–192.

The district court did not find that Hill requested access to the suitcase; it simply stated, "Trooper Richardson—and the evidence on this is not as clear as I would like it to be frankly—but Trooper Richardson apparently assumed after Mr. Hill had indicated this was his suitcase there along the wall, that Mr. Hill either wanted to take the suitcase or something from the suitcase by way of his personal belongings." Tr. at 20–21 (April 12, 1983). We cannot accept such an assumption as an exigent circumstance justifying Richardson's warrantless search of Hill's suitcase.[1] Thus, the government's argument to support the search of the suitcase and seizure of items from it boils down to whether we can justify this search as one incident to Hill's arrest, to prevent him from acquiring a weapon or destroying evidence "within his immediate control." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

The district court held that, at the time Richardson placed his hands on the suitcase, "Mr. Hill was within close enough range of the suitcase * * * that the trooper had a justifiable reason to be concerned with what might be in the suitcase and what Mr. Hill might do." Tr. at 21 (April

12, 1983). We accept the district court's factual assessment of the location of the parties during the search in question, but hold that the situation did not justify Richardson's actions: the search of Hill's suitcase was unreasonable and thus in violation of the fourth amendment's protection against unreasonable searches and seizures, made applicable to the states through the fourteenth amendment.

Initially, we express concern with regard to the timing of this search. The Supreme Court has clearly stated, "[W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the [search is remote in terms of time or distance from the arrest] * * *, or no exigency exists." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977) (citation omitted). We recognize that official accompaniment of an arrestee to unsecured areas for legitimate purposes and the seizure of items in plain view in such areas are not unreasonable measures under the fourth amendment. *Washington v. Chrisman, supra,* 455 U.S. at 9, 102 S.Ct. at 818. We question, however, whether law enforcement officers should be allowed to maneuver an arrestee close to personal belongings in order to search all items thus brought within the arrestee's immediate control. Under similar circumstances, the Ninth Circuit succinctly stated, "The police can not circumvent the Fourth Amendment's warrant requirement by arresting a person and then bringing that person into contact with his possessions which are otherwise unrelated to the arrest." *United States v. Rothman*, 492 F.2d 1260, 1266 (9th Cir.1973).

Even assuming that Hill was not improperly led near his suitcase by law enforcement personnel in this case, we cannot condone the warrantless search of his closed

---

1. The government's brief makes the following assertion without citation to the record: "Upon returning to the residence, Corporal Richardson inquired of appellant if the suitcase contained the items which appellant desired to take with him to jail and appellant replied that it did." Br. at 11. We have searched in vain for record support for this assertion, and the findings of the district court do not support it. Without inferring that the government intentionally attempted to mislead the Court, we suggest that this is an instance which called for citation to the "parts of the record relied on," as mandated by Fed.R.App.P. 28(a)(4).

suitcase given the facts before us. The Supreme Court has explicitly recognized that

[t]here is no * * * justification * * * for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.

*Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. at 2040 (footnote omitted). We hold that the search of Hill's suitcase was not conducted in an area within Hill's immediate control, and thus cannot be justified as a search incident to Hill's arrest and pursuant to his request to reenter the Frazier residence.

Richardson testified that at least two other officers followed him and Hill into the home to retrieve Hill's personal items. Tr. at 174 (April 11, 1983). When they entered the bedroom, Hill was "not so far away that he could have grabbed a weapon without [Richardson] being able to touch him." *Id.* at 190. Hill stopped inside the door to the bedroom and stood with Richardson approximately ten to twelve feet from the suitcase. *Id.* at 191. Hill did not approach the side of the room where the suitcase was located until Richardson went over to open it, and then Hill only "walked in that area" after Richardson. *Id.* at 192. Hill was four to five feet from Richardson when the latter actually opened the suitcase. *Id.* Moreover the district court expressly found that Richardson "was not so concerned with Mr. Hill as to handcuff him or to take other protective measures." Tr. at 22 (April 12, 1983). To the extent that the statements of the district court may be read to imply from these subsidiary facts an ultimate factual conclusion that the suitcase was in Hill's immediate control when Richardson searched it, we hold that the court clearly erred.

We can think of no other set of circumstances more aptly exemplifying a general search of closed containers within a room subsequent to an arrest "in the absence of well-recognized exceptions" to the fourth amendment warrant requirement. *See Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. at 2040. Hill made no antagonistic movements at any time while in the presence of the officers since they interrupted his dinner preparations two hours prior to his arrest, and he stood virtually immobile when escorted into the bedroom containing his personal possessions. At least one officer could have grasped Hill at all times after the reentry, and at least two others were in the immediate area around him. Richardson and others testified that Hill was not handcuffed prior to reentering the Frazier residence, *see, e.g.,* Tr. at 114–115, 179 (April 11, 1983), indicating their lack of apprehension towards him. If these factors were not enough to prevent the application of the search incident to arrest exception, we finally note that Richardson overlooked an AR–15 semiautomatic rifle leaning on the wall just to the left of the bedroom doorway until after searching Hill's closed suitcase and seizing evidence from it and elsewhere in the room. *Id.* at 177.

The government does not argue that the erroneous admission of the items taken from Hill's suitcase was harmless to his defense. On the record before us, no such argument could be seriously raised. We therefore reverse Hill's conviction because of the district court's failure to suppress critical evidence obtained from his suitcase in violation of the fourth amendment.

## IV. FRAZIER'S APPEAL.

■ Frazier raises the same contentions as Hill, but their application to Frazier's case requires separate analysis. First, we are not certain that Frazier had a legitimate expectation of privacy in Hill's suitcase sufficient to contest the admission of items seized from it as long as the officers were properly in the bedroom to Frazier's residence. *See Rawlings v. Kentucky,* 448 U.S. 98, 104–106, 100 S.Ct. 2556, 2561–2562, 65 L.Ed.2d 633 (1980) (defendant with property in friend's purse does not necessarily

have legitimate expectation of privacy in the purse). The government does not address the "standing" issue in this regard on Frazier's appeal, however. In any event, we do not believe that the evidence taken from Hill's suitcase was considered by the jury in finding Frazier guilty of possession of marijuana with the intent to distribute. The jury necessarily compartmentalized the evidence as against each defendant since both were acquitted of counts alleging a conspiracy to possess marijuana with the intent to distribute. Thus, the erroneous admission of the scale, the sealing device, and the marijuana grower's book found in Hill's suitcase had no prejudicial effect on Frazier's conviction and would be deemed harmless beyond a reasonable doubt as to that conviction even assuming Frazier's ability to raise the issue. *See United States v. Hasting,* — U.S. —, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (courts should overlook harmless errors even, at times, when constitutional violations are involved).

The admissibility of evidence which in fact implicated Frazier—the thirteen growing marijuana plants; the cut marijuana, cutting tray, and orange-handled scissors found in the living room; and the boxes of marijuana, cutting tray, and packaged marijuana found in the bedroom—is a question which we did not need to reach in Hill's case, because of the clear error and resultant prejudice in admitting against him items seized from his suitcase. As with our review of Hill's appeal, however, we find no clear error in the subsidiary factual findings of the district court with regard to the reentry to retrieve Hill's personal belongings after his arrest. Thus, for purposes of Frazier's appeal, we must accept that Frazier agreed to that reentry and that the agents found the loose and packaged marijuana and cutting tray in plain view in the bedroom during the reentry. Although one might argue that this evidence found in plain view in a bedroom in Frazier's residence, coupled with the growing marijuana found on his farm, eclipsed the importance of the additional cut marijuana, scissors, and cutting tray

found in the living room, we decline to dodge the difficult issue of the admissibility of the living room evidence by saying any error in its admission would be harmless. Were it not for the initial seizure of incriminating items from the living room, Frazier might never have consented to the reentry which uncovered similar items in the bedroom.

Under the particular circumstances of this case, we hold that officers Casteel and Castleberry legitimately entered the living room of the Frazier residence when first arriving at the farm and were entitled to seize the cut marijuana, scissors, and cutting tray observed in plain view as a result of that entry. In limited cases, we have recognized the validity of "sweep searches" or "protective sweeps" of premises for the safety of law enforcement personnel during the lawful arrest of dangerous felons. *E.g., United States v. Bruton, supra,* 647 F.2d at 822–823 (sweep search of locked mobile home after shootout with and arrest of defendant outside the structure); *United States v. Young,* 553 F.2d 1132, 1134 (8th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977) (search of house for accomplices after shootout with and arrest of defendant). *Accord United States v. Baker,* 577 F.2d 1147, 1152 (4th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978) (protective sweep of defendant's house after arrest of defendant and confederate in front of it). We believe the rationale of these cases applies equally strongly to protective sweeps made during the execution of search warrants when accompanied by facts such as those here present. *See United States v. Tabor,* 722 F.2d 596, 597–599 (10th Cir.1983) (protective sweep of barn during execution of search warrant covering house held justified under particular circumstances).

The government admits that the warrant to search for growing marijuana on Frazier's farm did not authorize any officer to enter the house on that property. In addition, that the warrant involved drugs was not an exigent circumstance sufficient of

**1170**

itself to justify a protective sweep of the inside of the house. *Cf. United States v. Hatcher,* 680 F.2d 438, 444 (6th Cir.1982) (sweep search of entire residence after arrest on drug charge merely because "the subject of drugs is a dangerous one" held unreasonable). In the instant case, however, the district court also found that Frazier hesitated when asked to call "Ted" out of the house when the search began. After this hesitation, Casteel observed a weapon in the living room through the sliding glass door. Under these circumstances, we hold that the entry into the living room to locate Hill was justified to protect the officers commissioned to execute the search warrant on the property surrounding the house. The items of evidence from the living room which were observed in plain view during that lawful entry could subsequently be seized as contraband and evidence of criminal activity.

Given the legality of the initial entry to secure the premises and of the seizure of evidence found in plain view in the living room, Frazier's consent to the reentry which produced evidence found in plain view in the bedroom, and the growing marijuana found pursuant to the warrant, we affirm Frazier's conviction for possession of marijuana with the intent to distribute.

**V. CONCLUSIONS.**

■ We agree with the district court's factual findings regarding the sequence and occurrence of events during the October 13, 1982, search of the Frazier farm and residence. Based on these facts, we also agree that the fourth amendment presented no barriers to the initial securing of the house by a short entry into its living room and to the subsequent consensual reentry to obtain Hill's personal belongings. We cannot from these subsidiary facts, however, agree that Hill's closed suitcase in the bedroom of the residence was in his immediate control at the time Corporal Richardson approached and opened it. Thus, the admission of items taken from the suitcase was constitutional error. For these reasons, we reverse Hill's

conviction—based on the prejudicial effect which the evidence found in the suitcase had on Hill's defense—and affirm Frazier's conviction based upon evidence unrelated to that found in the suitcase.