**STATE of Missouri, Respondent,**

v.

**Frederick Wayne TURNER, Appellant.**

**No. 50580.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 19, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1986.

Application to Transfer Denied
Oct. 14, 1986.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for appellant.

William L. Webster, Atty. Gen., Duane E. Butler, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant appeals from his conviction on one count of second degree murder, § 565.-021.1 RSMo (Cum.Supp.1984), for which he was sentenced to thirty years in prison. On appeal, defendant alleges that the trial court erred in: (1) overruling defendant's motion for judgment of acquittal; (2) overruling defendant's motion to suppress physical evidence; (3) overruling defendant's motion to suppress statements made by defendant before he had been advised of his *Miranda* rights; and (4) permitting defendant's ex-wife to testify about an allegedly confidential communication protected

by the marital privilege. Finding no error in the trial court proceedings, we affirm.

The evidence presented at trial established that defendant Wayne Turner and his son Jimmy had a strained relationship. But a confrontation between defendant and his son provided the impetus that eventually led to Jimmy's death. On January 11, 1985, the Turner family attended a rehearsal dinner for defendant's oldest son, Terry Turner, at the Sulphur Springs Baptist Church, located next to defendant's home. Defendant was not invited. After the dinner, defendant's ex-wife Peggy Turner remained at the church to clean up. Jimmy, Harold and Earline Turner went next door to their father's home to pick up some clothes for Earline. Defendant went to the church and asked Peggy to come home with him to talk. She refused. ·

Jimmy, Harold and Earline returned to the church, and everyone but defendant entered Peggy's car to leave. Peggy asked defendant to close her door, and he responded by slamming it shut. He opened the door, then slammed it shut again. He opened the door again and grabbed Peggy by the arm, dragging her from the car and tearing her coat. Jimmy then grabbed defendant in a headlock and Harold struck defendant in the ribs. Peggy ordered her sons to release defendant and they complied. Defendant told his children to never set foot on his property again.

On the evening of January 14, 1985, Donald Bufford, defendant's neighbor, telephoned defendant and told him that his son, James Bufford, had seen Jimmy driving near defendant's home with a rifle on the dashboard of his car. Shortly thereafter, Jimmy picked up his mother from work and brought her to the church to pick up her car.[1] After his mother left the church parking lot, Jimmy pulled into defendant's driveway. As Jimmy approached defendant, defendant brandished a .30 caliber Marlin deer rifle.

Jimmy ordered defendant to put the gun down so the two could "have it out." Defendant put the gun inside the door of the house. A fist fight ensued in which defendant suffered a cut on the cheek. The blow knocked defendant backwards. Defendant then retrieved his rifle from the house and shot his son in the back. Jimmy Turner subsequently bled to death.

Defendant first alleges that the trial court erred in overruling his motion for judgment of acquittal. Defendant asserts that the state failed to make the requisite showing of malice, and therefore the evidence did not support the conviction on second degree murder.

■ When reviewing the sufficiency of the evidence, this court must accept the state's evidence as true and consider inferences drawn therefrom in a light most favorable to the verdict. We must disregard all evidence and inferences to the contrary. *State v. Story*, 646 S.W.2d 68, 72 (Mo.1983) (en banc); *State v. Meyer*, 694 S.W.2d 853, 855 (Mo.App.1985). The fact that defendant's evidence conflicts with the evidence supporting the conviction is not significant. *See State v. Overkamp*, 646 S.W.2d 733, 737 (Mo.1983). We do not weigh the evidence; instead, we determine whether the finder of fact had sufficient evidence to find the defendant guilty beyond a reasonable doubt. *State v. Nations*, 676 S.W.2d 282, 285 (Mo.App.1984). The state presented sufficient evidence, set forth above, to sustain a conviction on second degree murder.[2] The trial court did not err in overruling defendant's motion for judgment of acquittal.

In his second point on appeal, defendant alleges that the trial court erred in overruling his motion to suppress physical evidence obtained in a warrantless search of defendant's home. On the night of the shooting, two deputy sheriffs entered de-

---

**1.** Jimmy had borrowed his mother's car earlier in the day because his car needed repairs.

**2.** "A person commits the crime of murder in the second degree if he: (1) Knowingly causes the

death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person...." § 565.021.1(1) RSMo (Cum.Supp.1984).

fendant's home and seized the murder weapon, a Marlin .30 caliber deer rifle. Defendant contends that the officers conducted an illegal search and seizure in violation of his fourth amendment rights because they did not obtain a search warrant before entering his home. Defendant maintains that none of the exceptions to the warrant requirement applied on the night of the shooting. We disagree.

■ The evidence reveals that the officers did not search the house until after defendant's neighbor had informed them that defendant's daughter had been living with defendant and was unaccounted for at the time of the shooting. The officers had a reasonable belief that an additional victim may have been in the house and in need of immediate aid. This created an emergency situation falling squarely within the exigent circumstances exception to the warrant requirement. *See Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). During the course of their search for additional victims, the officers observed several rifles and a pistol in plain view. The officers seized these weapons as evidence.[3] One of the rifles was later determined to be the murder weapon.

■ Evidence in plain view may be seized if the officers lawfully make an initial intrusion or are otherwise properly in a position from which they can view the area. *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983).[4] In the present case the officers did not have a search warrant nor did they have the own-

er's consent. But the exigent circumstances, created by the fact that defendant's daughter was unaccounted for, allowed the officers to enter the home without a warrant. *See Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413. Plain view permits the seizure of evidence when the officer's access to the evidence has some prior justification such as exigent circumstances. *Brown,* 460 U.S. at 738, 103 S.Ct. at 1541.[5] In the case before us, the officers had lawfully entered defendant's premises pursuant to an emergency situation when the officer inadvertently discovered the rifle, an item which he believed might be evidence of the crime. We find that the officers conducted their search pursuant to an exception to the warrant requirement. The trial court did not err in overruling defendant's motion to suppress the physical evidence.

■ In his next point on appeal, defendant claims that the trial court erred in overruling his motion to suppress statements made by defendant to a police officer before having been informed of his *Miranda* rights. Deputy James Johnson was the first police officer to arrive at defendant's residence after the shooting. As Johnson walked from his car, defendant approached him and said that "he didn't mean to do it."[6] Johnson then asked: "Where is the gun?" Defendant responded: "It's in the house." Johnson then viewed the body and escorted defendant to the police car. Johnson frisked defendant, read him his *Miranda* rights and placed him under arrest. Defendant argues that

---

**3.** "[T]he police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413.

**4.** In order to seize evidence under the plain view principle the police officer's initial intrusion must be lawful, the evidence must be discovered inadvertently, and it must be immediately apparent to the police that the items observed may be evidence of a crime. *Brown,* 460 U.S. at 737, 103 S.Ct. at 1540.

**5.** "Plain view" may be viewed "as an extension of whatever the prior justification for an officer's 'access to an object' may be." *Brown,* 460 U.S. at 739, 103 S.Ct. 1541.

**6.** The principles of *Miranda* only apply to custodial interrogation. *Miranda v. Arizona,* 384 U.S.

436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Defendant exclaimed that he did not intend to kill his son. Deputy Johnson had not asked any questions. Defendant's volunteered statement was nonresponsive, freely given and "not the product of interrogation." *State v. Kent,* 697 S.W.2d 216, 218 (Mo.App.1985). *See also State v. LaRette,* 648 S.W.2d 96, 103 (Mo.) (en banc), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983) (unsolicited, volunteered statement uttered during *Miranda* warnings held admissible). Defendant was not entitled to *Miranda* warnings before making this statement because he had not been interrogated, nor had he been taken into custody. The court properly admitted the statement.

the statements should not have been admitted into evidence because he had not yet been informed of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

■ Prior to any custodial interrogation,[7] police must inform a suspected criminal of his *Miranda* rights. *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630. But under certain circumstances an officer may briefly forego the mandates of *Miranda* in order to insure his own safety and the safety of others. *New York v. Quarles,* 467 U.S. 649, 655–56, 104 S.Ct. 2626, 2631–32, 81 L.Ed.2d 550 (1984).

■ In the present case, Deputy Johnson's primary concern upon arriving at the scene was to locate the gun and prevent additional deaths or injuries. Johnson asked a brief question, limited in scope, for the purpose of neutralizing a potentially dangerous situation. After Johnson ascertained that the gun was located in a secure place, he discontinued his interrogation and shortly thereafter informed defendant of his *Miranda* rights. Following the objective standard set forth in *Quarles,* we find that Deputy Johnson had a reasonable "concern for the public safety." *Quarles,* 467 U.S. at 656, 104 S.Ct. at 2632. Therefore Johnson was not required to inform defendant of his *Miranda* rights until after the gun had been located.[8] The trial court properly admitted the statement.

In his final point on appeal defendant alleges that the trial court improperly overruled his objection to the testimony of his ex-wife Peggy Turner. At trial, the prosecutor asked Peggy Turner how defendant had reacted when Jimmy moved in with his uncle Charles, defendant's brother. She responded that defendant was not happy about it. The prosecutor then asked what defendant had said about the situation. Defense counsel objected because the prosecutor failed to lay a proper foundation. The court sustained the objection. Peggy then testified that Jimmy had moved in with Charles two years before the trial. Defense counsel objected on the basis of remoteness. The court overruled the objection. Peggy then testified that defendant said that "he ought to go in and burn down their house and shoot 'em, each one of them as they come out."

On recross-examination defense counsel asked Peggy if any other persons were present when defendant made the statement. Peggy responded that she was not sure, she could not remember. Defendant then objected on the basis of a confidential communication protected by the marital privilege and requested that the statement be stricken and disregarded. The court denied defendant's request.

■ A wife may testify against her defendant husband in a criminal action at her option, provided she does not disclose any confidential communications.[9] Section 546.260 RSMo (Supp.1985). Communications are deemed confidential when exchanged between husband and wife in private. *State v. Montgomery,* 571 S.W.2d

---

7. "[C]ustodial interrogation ... [is] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). While we believe that Johnson's brief question did not constitute custodial interrogation under this standard, we need not be determinative given our holding that the "public safety" exception applies. *See infra* text.

8. "[T]he need for answers to questions in a situation posing a threat to public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Quarles,* 467 U.S. at 657, 104 S.Ct. at 2632. *See also State v. Thomas,* 664

S.W.2d 56 (Mo.App.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 127, 88 L.Ed.2d 104 (1985). The Missouri Court of Appeals for the Southern District found *Miranda* warnings unnecessary in a situation posing a threat to the policeman and others. *Id.* at 60. (Note that *Thomas* was handed down before the "public safety" exception was announced in *Quarles.*)

9. Defendant and Peggy Turner were divorced at the time of trial but married at the time of the statement. The marital privilege continues to protect confidential communications exchanged during the marriage even after divorce. *See State v. Euell,* 583 S.W.2d 173, 176 (Mo.1979) (en banc); *State v. Manning,* 682 S.W.2d 127, 130 n. 2 (Mo.App.1984).

784, 787 (Mo.App.1978). Defendant claims that the statement he made to Peggy is a confidential communication protected by the marital privilege. But "the party claiming a privilege must show it is applicable." *State v. Schupp*, 677 S.W.2d 909, 912 (Mo.App.1984). Defendant failed to establish that he and Peggy were alone when the exchange took place. Peggy testified that she was not sure if she and defendant were alone when defendant made the statement. This evidence—the only evidence before this court on the issue—certainly does not support defendant's contention that he and Peggy were alone. Because defendant failed to prove an essential element of the privilege asserted, his final point is denied.[10]

Finding no error in the proceedings below, we affirm the decision of the trial court.

KAROHL, P.J., and SIMON, J., concur.

---

**10.** A spouse may testify regarding threats and crimes by defendant directed at the spouse. *T.C.H. v. K.M.H.*, 693 S.W.2d 802, 804 (Mo.1985) (en banc); *State v. Johnson*, 586 S.W.2d 437, 441 n. 3 (Mo.App.1979). A spouse may also testify concerning crimes committed by defendant upon any children of the witness spouse. *State v. Moore*, 690 S.W.2d 453, 456 (Mo.App.1985). Similarly, we believe that the marital privilege does not protect threats of violence made by defendant directed at a child of the witness spouse.