STATE of Missouri, Respondent,

v.

Cindy Lou DUNCAN, Appellant.

No. WD 46213.

Missouri Court of Appeals,
Western District.

Dec. 7, 1993.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

ULRICH, Presiding Judge.

Cindy Lou Duncan appeals her conviction for unlawful use of a weapon (exhibiting), in violation of § 571.030, RSMo (1986). Ms. Duncan contends the trial court erred in overruling her motion to suppress the weapon she was accused of flourishing. Ms. Duncan asserts that the weapon was seized as a result of an unreasonable search and seizure in violation of the Fourth, Fifth, and Fourteenth Amendments and should have been excluded from evidence.

The judgment of conviction is affirmed.

Early the afternoon of August 25, 1991, Officer Robin McDonald received a dispatch to proceed to Ms. Duncan's address to contact a female about a theft at that address. Officer McDonald arrived at Ms. Duncan's home and parked in the driveway. Before Officer McDonald stepped onto the lawn, Ms. Duncan emerged from her front door holding a rifle in both hands with her right hand just behind the trigger. She yelled at Officer McDonald that "she didn't want to talk to anybody but Chumbley or Ludwig and if anybody stepped on her property, they would be taken off in a body bag." As she yelled, Ms. Duncan made a "sweeping motion" with the rifle; the arc of the rifle's motion "moved across" the officer.

Officer McDonald remained at the edge of the driveway. She briefly attempted to persuade Ms. Duncan to calm herself. In less than a minute Ms. Duncan went inside her house.

Officer McDonald returned to headquarters and contacted Sergeant Smith. Sergeant Smith enlisted the aid of Police Chief Koenig and Deputy Sheriff Trickel and the four officers returned to Ms. Duncan's address.

Chief Koenig and Officer McDonald approached the rear of the house, and Deputy Trickel and Sergeant Smith approached the front. Sergeant Smith testified that, through the windows, he could see Ms. Duncan and her "adult" son moving about inside the house. As the four officers approached the porch, Ms. Duncan emerged from the front door without the rifle. She left the front door open. Sergeant Smith and Deputy Trickel both testified that they could see the rifle leaning against a wall just inside the door. Chief Koenig informed Ms. Duncan that she was under arrest and, as she was being handcuffed, asked where the rifle was. Ms. Duncan responded that it was inside the door. Chief Koenig stepped inside and retrieved the rifle.

Ms. Duncan contends that the trial court erred in admitting the rifle into evidence over her objection and motion to exclude it. Ms. Duncan claims that the law enforcement officers viewed the weapon inside the house and seized it as the result of information she provided when interrogated without first being advised of her rights pursuant to *Miranda*.[1] Additionally, Ms. Duncan claims the rifle was improperly admitted as evidence because it was seized from inside her home without a warrant, and she was arrested outside of the home.

■ Chief Koenig's inquiry of Ms. Duncan about the location of the rifle without first giving the *Miranda* warnings as she was arrested was permissible under a public safety exception. *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *State v. Turner,* 716 S.W.2d 462, 466 (Mo.App.1986). The public safety exception does not depend on the motivation of the individual officers involved but rather whether a reasonable officer would ask instinctively to protect his own safety or the safety of others. *Quarles, supra* 467 U.S. at 656, 104 S.Ct. at 2631. The location of a rifle that the officers knew was brandished at the location a short time earlier would have been a reasonable safety concern to the officers. Ms. Duncan's threats made in Officer McDonald's presence that if anyone, other than two people Ms. Duncan had requested, stepped onto her property, "they would be taken off in a body bag," made the location of the rifle especially meaningful. However, two other officers had already seen the rifle inside the door of the house leaning against a wall, and

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

its ultimate possession by law enforcement authorities was not the fruit of improper interrogation.

A more intricate question is whether a police officer could properly, without a warrant or consent, enter the confines of Ms. Duncan's home to retrieve the firearm when Ms. Duncan had been arrested on the porch outside of the house. The inside of the unambiguous physical dimensions of a person's home has always been the quintessential zone of privacy. *Payton v. New York*, 445 U.S. 573, 589, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). The Fourth Amendment guarantees that citizens are generally to be secure in their homes from warrantless searches unless a recognized exception exists.[2] *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978); *see also, State v. Olds*, 603 S.W.2d 501, 506 (Mo. banc 1980) (all searches without a valid warrant are unreasonable unless within an exception). The Fourth Amendment is not a guarantee against all searches and seizures, only against unreasonable searches and seizures. *U.S. v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *State v. Kovach*, 839 S.W.2d 303, 309 (Mo.App.1992).

Two officers testified that they could see the rifle inside Ms. Duncan's house before Chief Koenig asked Ms. Duncan where the weapon was located. If an officer is lawfully present, he can seize evidence in plain view without a warrant. *Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983); *State v. Turner*, 716 S.W.2d 462, 465 (Mo.App.1986); *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo.

banc 1992); *see also, Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) (the plain view exception is a seizure doctrine). Observation of that which is open to view is not a search. *State v. Beals*, 670 S.W.2d 593, 594 (Mo.App.1984); *State v. Hawkins*, 482 S.W.2d 477, 479 (Mo. 1972). The officers "legitimately" occupied the position that afforded them the plain view into the hallway of Ms. Duncan's house. Were it not for the threshold of the doorway, there would be no question but that the rifle could be properly seized by the law enforcement officers under the plain view doctrine without first obtaining a warrant.

At least three rationales support the conclusion that seizure of the rifle inside the door of the house was not an unreasonable seizure. First, Ms. Duncan left the front door wide open. Because the door was left open, the rifle was within her reach. Law enforcement officers can lawfully search for and seize weapons within the zone of an arrestee's accessibility as part of a protective search incident to arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Second, the police knew that Ms. Duncan's adult son was somewhere inside the house at the time of the arrest. They had reason to believe that the rifle was also inside the house. For their own protection they were entitled to do a protective sweep of the house, *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *State v. Rogers*, 825 S.W.2d 49, 53 (Mo.App.1992), and seize the rifle in plain view as part of that sweep. *State v. Turner*, 716 S.W.2d 462, 465 (Mo.App.1986).[3] Third, since Ms. Duncan voluntarily left the door to

---

**2.** Recognized exceptions include: Hot pursuit, *Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967); search incident to arrest, *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); imminent destruction of evidence, *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966); *Ker v. California*, 374 U.S. 23, 39–40, 83 S.Ct. 1623, 1632–33, 10 L.Ed.2d 726 (1963); preservation of evidence, *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978); protection of potentially endangered individuals inside, *Hayden, supra* 387 U.S. at 298–99, 87 S.Ct. at 1645–46; *State v. Turner*, 716 S.W.2d 462, 465 (Mo. App.1986); and protective sweeps, *Maryland v.*

*Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990).

**3.** There is some indication that Ms. Duncan's younger child, "the baby, Charley," may also have been inside the house. Had there been a clearer showing of proof on this issue—that the officer reasonably believed a child was inside the house and that a gun previously brandished was also probably inside—entry into the house and seizure of the rifle by the law enforcement officer for the safety of the child may have been reasonable, even though the suspect was arrested in the yard. *U.S. v. Antwine*, 873 F.2d 1144, 1147 (8th Cir.1989).

the house open and exposed the interior of the house to plain view by officers outside, no search occurred. Stepping through the open door to retrieve the rifle was not an unreasonable seizure. *See Washington v. Chrisman*, 455 U.S. 1, 8, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982) (it is of no legal significance whether the officer was in the room or on the threshold); *U.S. v. Peters*, 912 F.2d 208, 210 (8th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991); *U.S. v. Arcobasso*, 882 F.2d 1304, 1306 (8th Cir.1989); *U.S. v. Hill*, 730 F.2d 1163, 1170 (8th Cir.1984), *cert. denied*, 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984).

Each of these three rationales supports the trial court's decision to admit the rifle into evidence. The point is denied. Ms. Duncan's conviction is affirmed.

All concur.