STATE of Missouri, Respondent,

v.

Rickey JOHNSON, Appellant.

Rickey JOHNSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 65939, 67212.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 3, 1995.

Raymond J. Capelovitch, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Rickey Johnson appeals convictions of first degree burglary and attempted second degree robbery. The court imposed consecutive fifteen and seven year sentences as a prior offender. Johnson also appeals denial of post conviction relief under Rule 29.15 without a hearing. We affirm.

Alice and Clyde Schaeffer, an elderly couple, resided at 4532A Oakland Avenue, St. Louis, Missouri. On July 29, 1993, Mrs. Schaeffer discovered Johnson in her home. Johnson grabbed her by her throat and demanded money; she screamed. Mr. Schaeffer heard the scream. He grabbed his shotgun and ran to his wife. He approached Johnson in the hallway pointing the shotgun to his head and ordering Johnson to release his wife. Johnson grabbed the shotgun from Mr. Schaeffer, knocking him to the floor, then fled with the gun.

The St. Louis City Police received two anonymous tips six days after the burglary. A phone tip informed police a black man named "Rickey", about thirty years of age, lived at 4537 Oakland and "was responsible for a burglary in the same block...." That same day, another person arrived at the Detective Bureau and reported Rickey Johnson had a double-barrel shotgun at 4537 Oakland. The police ran a computer check based on the information provided by the tips and discovered a burglary occurred at 4532A Oakland and a double-barrel shotgun was taken.

Based on this information, three officers proceeded to 4537 Oakland to investigate. They knocked on the door, but received no answer. The officers walked to the back of the house and found Johnson sitting on the back steps. One of the officers informed Johnson of the burglary investigation, advised him of his *Miranda* rights and then proceeded to question him. At the same time, another officer noticed the rear door ajar. He saw a double-barrel shotgun leaning against the kitchen corner. One of the officers entered the residence, seized the shotgun, and took it across the street to the elderly couple's home where Mr. Schaeffer identified it.

### Direct Appeal

■ Johnson contends the trial court erred in denying his motion to suppress the shotgun because it violates his constitutional rights against unreasonable search and seizures. Johnson also claims the seizure occurred before he was placed under arrest. The state responds by asserting the shotgun was admissible because it was lawfully seized from Johnson's home under the "open view" doctrine and the "exigent circumstance" doctrine. An appellate court will affirm a trial court's ruling on a motion to suppress if the evidence is sufficient to sustain such a finding. *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992). All facts and reasonable inferences are viewed in favor of the order challenged on appeal. *Id.*

■ The evidence supports a finding Johnson was arrested before or contemporaneously with the seizure of the shotgun. The officers had probable cause to suspect Johnson committed the burglary because: (1) he lived across the street from the Schaeffers; (2) police received two anonymous tips Rickey Johnson had a double-barrel shotgun at 4537 Oakland and he was responsible for the Schaeffer burglary; and, (3) a patently untruthful denial by Johnson that he had a shotgun.

When Johnson did not answer the front door, the police proceeded to the back of the house where they saw him. At first, Johnson denied owning a gun. During their investigation, it was by chance one of the officers noticed through an open door, a double-barrel shotgun leaning against the wall in the kitchen. The officer immediately informed his partner of the shotgun. When one of the officers confronted Johnson, he admitted he bought the shotgun a couple of months earlier on the street and lied about it because he was still on parole. Then the officers arrested Johnson and recovered the shotgun.

■ The warrantless seizure of the shotgun was justified under the "plain view"

doctrine. An officer may seize evidence in "plain view" without a warrant if the item to be seized is clearly incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *Washington v. Chrisman*, 455 U.S. 1, 5, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982); *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992).

The police officers were lawfully in the position that afforded them plain view into the kitchen and their discovery was inadvertent. The open rear door exposed the interior of the kitchen to plain view by the officers. Stepping through the open door to retrieve the shotgun was not an unreasonable seizure. *See, State v. Duncan*, 866 S.W.2d 510, 513 (Mo.App.1993). Further, the officers believed they had incriminating evidence before them. One of the officers testified the shotgun resembled the gun described by the crime reports.

> The only thing that would differentiate [this particular shotgun from any other shotgun] was—was when it was reported, it was a [sic] older shotgun. We knew we were looking for a [sic] older barrel, double-barreled shotgun. From the gun, we could tell it was a double-barreled shotgun.

We decline to address whether the search was valid under the doctrine of exigent circumstances because the warrantless seizure of the shotgun was justified under the plain view doctrine. Point denied.

■ Next, Johnson argues the trial court plainly erred in offering Jury Instruction No. 4, patterned after MAI–CR 3d 302.04. He contends the language "firmly convinced" dilutes the meaning of reasonable doubt in violation of due process. He cites *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) for the proposition that "a defendant cannot be convicted of an offense 'without convincing a proper factfinder of his guilt with the utmost certainty.'"

This issue was squarely decided in *State v. Antwine*, 743 S.W.2d 51, 63 (Mo. banc 1987) and *State v. Guinan*, 732 S.W.2d 174, 177 (Mo. banc 1987). The instruction does not reduce the burden of proof as required of the state. Therefore, Johnson's point is denied.

### PCR Appeal

Johnson contends his due process rights were violated because the court denied his motion for post conviction relief. Johnson filed his direct appeal transcript on July 14, 1994. On August 22, 1994, he filed his motion for post conviction relief, pursuant to Rule 29.15.

■ Our review is limited to whether the trial court's findings and conclusions are clearly erroneous. Rule 29.15(j). The movant has thirty days after the filing of the transcript on appeal to submit a motion to vacate, set aside or correct the judgment or sentence. Rule 29.15(b). The time limitations for filing a post conviction motion under Rule 29.15 are mandatory and reasonable, and have been upheld as constitutional. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). They serve to avoid delay and prevent the litigation of stale claims. *Id.*

Johnson filed his pro se motion eight days too late. His failure to file his motion within thirty days after the filing of the transcript on appeal constituted a complete waiver of his right to proceed under Rule 29.15(b). We are bound by the decision of the Supreme Court of Missouri in *Day*. We affirm the order dismissing the motion.

We affirm both judgments.

REINHARD, P.J., and WHITE, J., concur.