**STATE of Missouri, Respondent,**

v.

**Patrick Duncan KARL, Jr., Appellant.**

**No. WD 68855.**

Missouri Court of Appeals,
Western District.

Dec. 9, 2008.

Dennis J. Campbell Owens, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, and Shaun Mackelprang, Office of Attorney General, Jefferson City, MO, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Patrick Karl (Karl) appeals his conviction by a jury for persistent offender driving while intoxicated on the basis that the state presented insufficient evidence at trial for conviction beyond a reasonable doubt. We affirm the judgment because there is sufficient evidence in the record from which a reasonable juror could conclude that the state met its burden on each element of the offense.

Karl contends that the evidence was insufficient as to both the driving and the intoxication elements. He argues that no witness identified him as the driver at the time of the accident and that the only evidence of intoxication was that "before the accident he was at a softball tournament where alcohol was being consumed, that his former wife thought he may have been drinking, that there was a single-vehicle accident, that his eyes appeared watery and bloodshot after the accident, and that he initially refused sobriety tests."

### Standard of Review

We limit our review to "a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). "In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.*

### Factual and Procedural Background

Karl left a softball tournament one evening in his rented pickup truck and shortly thereafter was involved in a single-vehicle rollover accident. His ex-wife, Angela Karl (Angela), and their eight-year-old son were also present at the park. While there, Karl's son asked Karl for a drink from a Styrofoam soda cup he was holding, but Karl refused. Suspecting that the cup contained alcohol, Angela took a drink from it. She testified that it was "pop with whiskey or—I don't know. I don't drink whiskey. That's kind of what I thought it was because it was terrible."

Because she suspected that Karl had been drinking, Angela told Karl that their son would ride with her instead of with him. Karl replied, "Oh, come on. It's my first one." Angela testified that Karl was "physically kind of stumbling over himself." He also asked her to come to his house where they could grill some steaks together, which reinforced her suspicion that he had been drinking because they had recently finalized a bitter divorce and were not on such friendly terms. She and her son then got in her car and drove away, with Karl immediately behind them in his truck. Angela estimates that they left the park between 6:30 and 6:45, which she remembers because she had a 7:00 appointment. Angela testified that Karl was alone in his truck. When they reached a highway intersection, Angela turned south and watched as Karl turned north.

About two miles up the road, the truck veered off the road onto the right shoulder. The driver then overcorrected and crossed over to the southbound lane and off the road, rolling the vehicle and causing extensive damage to it. Meanwhile, Vickie and Danny Nichols passed the truck in their vehicle, headed south. Vickie testified that as they passed the truck immediately before the accident, she saw only one person in the truck. Vickie watched the truck veer off the road in her rear view mirror and then saw a cloud of dust form on the other side of the road. She told her husband to turn around because it looked like there had been an accident. The Nicholses saw no other vehicles behind the truck. When they arrived at the scene, Vickie saw Karl's arm hanging out the driver's side window and told a 911 operator that the driver was alive.

The only other person at the scene was a man on a motorcycle. At trial, Karl's softball teammate, Nick Swope, claimed to be that person. He testified that someone besides Karl had been driving the truck and that the driver rode off in a car with some women from Kansas City immediately after the accident. According to Danny Nichols, however, Karl said twice shortly after the accident that he had been the only occupant of the truck. Swope also stated that Karl had been drinking beer after the tournament.

Sergeant Dale Chenoweth of the Missouri Highway Patrol testified that he believed the accident happened at 6:50 and he arrived at the scene eighteen minutes later, at 7:08. He saw Karl sitting on an embankment, being treated by first responders for his wounds. Chenoweth stated that Karl had an odor of intoxicants about him. Corporal Doug Black arrived at approximately 6:57. Vickie Nichols pointed to Karl and told Black he was the driver of the truck. Black testified that Karl smelled like alcohol, and his eyes were watery and bloodshot. Karl told him that he was not the driver but refused to tell Black who had been driving. Karl refused to take any field sobriety tests at the scene. He demanded a blood test two hours later, in the hospital, which the officers refused because such a test would have no bearing on Karl's blood alcohol

level at or near the time of the accident. The officers searched the area surrounding the truck for any additional passengers who may have been ejected but found none. Karl was arrested and taken to the hospital.

Angela found out about the accident around 7:00 and went to the hospital. When Karl saw her, he began crying upon acknowledging that his son would have been with him during the accident if not for Angela's intervention. Angela testified that he stated, "I'll do what you want me to do.... I'll check myself in tomorrow.... I'll go to treatment.... Just don't take my son away from me." According to emergency room records, Karl admitted to drinking eight beers before the accident. His blood alcohol level at the hospital was .276 at 8:15 p.m.

The jury found Karl guilty of driving while intoxicated. Because Karl had two other DWI convictions on his record, he was found to be a persistent offender, making this conviction a class D felony under section 577.023.3.[1] He was sentenced to two years with the Missouri Department of Corrections. Karl appeals, arguing the evidence presented was insufficient for conviction.

## Discussion

■ "A person commits the crime of driving while intoxicated if he operates a motor vehicle while in an intoxicated or drugged condition. 577.010.1. Circumstantial evidence may be used to prove the elements of driving while intoxicated, however, in those cases in which the accused's engine was not running at the time in question, the State must present significant additional evidence of driving and the connection of driving in an intoxicated

state...." *State v. Chambers,* 207 S.W.3d 194, 197 (Mo.App. S.D.2006) (internal quotation marks omitted).

Karl relies heavily on the testimony of Nick Swope, who testified that Karl was only a passenger in the truck. However, because Swope's testimony is unfavorable to the state, we disregard it, with the exception of his statement that Karl had been drinking beer at the tournament.

■ As to the driving element, there is ample evidence to support the verdict. Angela saw only Karl get in the truck and she saw no change of driver between the park and the highway. Minutes thereafter, and approximately two miles up the highway, Vickie Nichols saw only one person in the truck. After the accident, Karl told Danny Nichols twice that he was the sole occupant. Karl was seen hanging out the driver's side of the car after the accident. Finally, the officers searched the surrounding area for other possible occupants and found none. This evidence is sufficient to establish, beyond a reasonable doubt, that Karl was driving the truck at the time of the accident.

■ Karl relies on *State v. Davis,* 217 S.W.3d 358 (Mo.App. W.D.2007) to support his argument as to the intoxication element. Davis fled the scene of an accident and an officer later found him at a nearby residence. *Id.* at 359. Although Davis's eyes were watery, glassy, and bloodshot, he refused a breathalyzer, and beer cans were found in his car, we held the evidence was insufficient to support a DWI conviction because the state failed to present evidence as to when Davis began drinking or how much he had to drink. *Id.* at 359, 360–61.

---

1. All statutory references are to RSMo 2000, updated through the 2007 Cumulative Supplement.

In contrast, there is evidence in this case indicating that Karl was drinking immediately before getting in his truck and that he drank a substantial amount of alcohol. A reasonable inference to be drawn from Angelas reaction to the taste of Karl's drink is that it contained alcohol. His behavior before the accident, at the scene, and after the accident, including his expressions of remorse to Angela, indicates that he had been intoxicated during the accident. Moreover, Nick Swope stated that Karl had been drinking beer in the short period between the end of the tournament and Karl's driving off. Two officers smelled intoxicants on Karl at the scene of the accident. Although Karl's substantial blood alcohol level over an hour after the accident is not definitive proof of intoxication, taken together with the rest of the evidence, it would lead a reasonable fact finder to conclude that Karl was intoxicated at the time of the accident. Karl refused all sobriety tests at the scene. Finally, the erratic driving that led to the rollover also suggests intoxication.

There is sufficient evidence in the record from which a reasonable juror might have found every element of the offense of driving while intoxicated beyond a reasonable doubt.

The judgment is affirmed.

LISA WHITE HARDWICK, Judge, and JAMES E. WELSH, Judge, concur.