**STATE of Missouri, Respondent,**

v.

**Jeffrey W. DAVIES, Appellant.**

**No. WD 70910.**

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2011.

Application for Transfer Denied March 1, 2011.

Shaun J. Mackelprang and James B. Farnsworth, Jefferson City, MO, for respondent.

Kent E. Gipson, Kansas City, MO and Michael Insco, St. Joseph, MO, for appellant.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, GARY D. WITT, Judge and HADLEY GRIMM, Special Judge.

GARY D. WITT, Judge.

Appellant, Jeffrey Davies appeals his convictions, following a jury trial, of one count of enticement of a child, Section 566.151,[1] and two counts of attempted statutory sodomy in the first degree, Sections 566.062, 564.011. For the reasons set forth herein, Davies's enticement of a child conviction is amended to attempted enticement of a child, and in all other respects the judgment and sentence of the trial court is affirmed.

## Factual Background

Appellant, Jeffrey Davies ("Davies"), was convicted by a jury in the Buchanan County Circuit Court of one count of enticement of a child, Section 566.151, and two counts of attempted statutory sodomy in the first degree, Sections 566.062, 564.011. Davies was sentenced to five years for enticement and ten years for each of the two attempted statutory sodomy charges. The two ten year sentences were to run concurrently to each other but consecutively to the five year sentence, for a total sentence of fifteen years in prison.

In 2005, the Buchanan County sheriff's department instituted a sting operation whereby the police department with the help of college interns would attempt to catch individuals who would meet underage children on the internet and attempt to meet them in person for sexual purposes. The department used the college interns as decoys who would converse with

---

1. All statutory references herein are to RSMo Cum.Supp.2006 unless otherwise noted.

the would-be perpetrators online until a meeting was arranged. In June 2006, intern Rachel Schellenberger created a fictitious profile on Yahoo called i—love—candy—92 under the name of "Jaime Jacobs" ("Jaime"). On June 6, 2006, Davies, a twenty-eight year old man, logged in as civil200077 and began chatting with "Jaime" in a chat room named "Toy Box."[2] Davies and "Jaime" chatted on a total of four occasions: June 6, 7, 8, and 12. "Jaime's" fictitious profile had her living in St. Joseph, Missouri, and "Jaime" first communicated to Davies that she was fourteen years of age and then subsequently in the same conversation changed her age to thirteen years old.

During the first chat between Davies and "Jaime" on June 6, 2006, Davies told "Jaime" she was too young for him, but he then began discussing sexually explicit topics with her such as: whether she was bisexual, her sexual history, masturbation, oral sex, pubic hair, avoiding pregnancy, anal sex, and the type of panties she wears. Davies also told "Jaime" the conversation was making him "horny," and he asked her multiple times on what street she resided.

The second conversation was on June 7, 2006. Davies contacted "Jaime" and offered that if he were in St. Joseph they could hang out, and he asked her whether she would date him if he were younger. Davies asked "Jaime" what she was wearing and whether she was wearing panties and a bra. Davies then inquired as to whether "Jaime" shaves her legs and pubic hair. Finally, Davies told "Jaime," "if you want to learn, we still might be able to mess around sometime."

The third conversation was on June 8, 2006. In that conversation, Davies asked whether he could come over and meet "Jaime" at some time. He attempted to get "Jaime" to tell him her address but she refused. Davies insisted that "Jaime" had nothing to worry about; no one would see him; and if someone came home, he would run out the back door. Davies then attempted to get "Jaime's" telephone number. "Jaime" suggested the two could meet somewhere close to her home, but they did not plan a meeting that day. Instead, they made plans to chat again later.

The fourth conversation was on June 12, 2006. In that conversation, Davies asked why "Jaime" did not have a boyfriend and how many boys she had kissed. He again attempted to get "Jaime's" photo, address, and phone number. Davies then asked "Jaime" whether she wanted to meet up that night when he returned from Kansas City.

At this point in the conversation, Davies logged out of the screen name he had been using during the previous conversations and logged back in as saintjoe—guy64506.[3] Davies, as saintjoe—guy64506 contacted "Jaime," telling her he was a seventeen year-old male from St. Joseph, Missouri. "Jaime" informed Davies that she was thirteen years old. Davies asked "Jaime" what she looked like and suggested that they meet up sometime. Davies asked where "Jaime" lived and inquired into her sexual history. They discussed "Jaime's" relationship with Davies's other online persona, civil200077, and he asked her whether she would have sex with civil200077. He discussed safe sex and condoms with

---

**2.** This chat room was devoted to adult oriented sex toys.

**3.** It was discovered that Davies was behind both online personas after the conversation but before the two were supposed to meet by Trooper Brad Ussary pursuant to a subpoena of the Internet Service Provider and Hotmail records.

"Jaime," pubic hair, and offered to teach her how to have sex. He told her in graphic terms that he would teach her how to perform oral sex on a man and offered to perform oral sex on her. Also, he told her about anal sex and propositioned her. Davies then arranged to meet with "Jaime" that evening at 6:00 in the Meierhoffer Cemetery. He told her they could "do some sexual stuff in [his] car." Davies told her it would be easier if she wore a skirt. He told her they would have oral sex, fingering, kissing, and could try anal sex if she wanted. Then he suggested they could have sex without a condom but then decided that since she was in a fertile state they should use a condom. He told her he really likes thongs and offered to bring her one. This concluded Davies's conversation with "Jaime" as seventeen year-old saintjoe—guy64506.

Davies then logged back into the chat as civil200077 and contacted "Jaime" again. He asked "Jaime" what she had been doing, and "Jaime" informed him that she had been chatting with a new guy on the internet and that she would not be able to meet up with Davies (as civil200077) that evening. Davies inquired as to what "Jaime" would be wearing that evening and offered her advice. He tried to get "Jaime" to tell him exactly what she would be doing when she met up with her other on-line friend, asking her in graphic terms if she was going to perform oral sex on him, whether she would French kiss him and let him perform oral sex on her. This concluded the interactions between Davies and "Jaime" on the internet.

Trooper Brad Ussary and his partner Corporal Roger Phillips set up surveillance at Meierhoffer Cemetery that evening. The surveillance team observed a car matching the description given by Davies to "Jaime" drive slowly past the area

where he had agreed to meet "Jaime." The investigators stopped Davies's car and inquired as to what Davies was doing in the cemetery. Davies said he was looking to see whether the tombstones were flat or upright. Davies was then given his *Miranda* warnings. Investigators again asked Davies what he was doing, and he replied that he wanted to "see what residence the little girl came out of so that he could tell her parents what she was doing." Davies signed a consent for search form which authorized a search of Davies's vehicle. Davies then accompanied investigators to the police station.

At the police station, Davies waived his *Miranda* rights in writing. He was shown the printouts from each of the chats he had with "Jaime," and Davies initialed each chat transcript, signaling that "he agreed with what was on it as far as his recollection of what was said." He admitted to participating in the chats and broke down in tears saying he would cooperate fully. Davies then made a handwritten statement in the form of an apology letter, as this is what was requested by the officer. In this statement, Davies admitted that he changed profiles from civil200077 to stjoe—guy64506 because he hoped she would meet someone who was 17 years old as opposed to 28 years old under his previous profile.

Davies telephoned his wife while at the police station and informed her that he had been arrested for soliciting a minor on the internet. She hung up on him, and he called back a few hours later. She asked how old the minor was and he told her she was thirteen. The following day, after Davies was released, he and his wife had another conversation about the incident where Davies repeated that the minor was thirteen years old.[4] Over the objections of

---

4. It is unclear at which point Davies learned that there was in fact no minor but a decoy.

Davies, his wife testified at trial about each of the conversations she had with Davies. Davies's invocation of spousal privilege was rejected by the court. Specifically, his wife testified that Davies never denied committing the crime and he did not tell her that he believed "Jamie" to be over the age of eighteen. Davies testified at trial and admitted he had the conversations with "Jaime" but insisted he never believed "Jaime" was a minor but, rather, believed that they were "role playing" in their internet conversations.

The jury found Davies guilty of one count of child enticement and two counts of attempted first-degree statutory sodomy. The court sentenced Davies to fifteen years in prison; five years for child enticement to run consecutively to the concurrent ten year sentences for each count of attempted statutory sodomy. Davies now appeals.

### Analysis

In Point One, Davies argues the trial court erred in denying his Motion for Judgment of Acquittal because the evidence adduced at trial was legally insufficient to support his conviction under Count I of Enticement of a Child, because a necessary element of the crime requires that the enticement be of a person under the age of fifteen.

■■■ "When a defendant challenges the sufficiency of the evidence to support a conviction, our review is limited to 'a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'" *State v. Thompson*, 314 S.W.3d 407, 410 (Mo.App. W.D.2010) (quoting *State v. Karl*, 270 S.W.3d 514, 515 (Mo.App. W.D.2008)). "We accept as true all evidence favorable to the State, including all favorable inferences drawn therefrom, and disregard all

evidence and inferences to the contrary." *Id.* (citing *Karl*, 270 S.W.3d at 515). " 'A jury may believe all, some or none of a witness'[s] testimony, and the jury must resolve any contradictions or conflicts in that testimony.' " *Id.* (quoting *State v. McMellen*, 872 S.W.2d 508, 510 (Mo.App. W.D.1994)).

The crime of Enticement of a Child, Section 566.151.1, for which Davies was convicted, requires that (1) "A person at least twenty-one years of age or older," (2) "persuade[ ], solicit[ ], coax[ ], entice[ ] or lure[ ] whether by words, actions or through communication via the Internet or any electronic communication," (3) "any person who is less than fifteen years of age," (4) "for the purpose of engaging in sexual conduct." The only element that Davies contests is element (3) which requires the person enticed be less than fifteen years of age. In the present case, this was a sting operation conducted by the Buchanan County sheriff's department and the person enticed was the online persona of a fictitious thirteen year old girl named "Jaime." The person behind the persona was a twenty-five year old intern named Rachel Schellenberger. None of these facts are disputed.

The State argues that it does not matter that the person on the other end of the computer was fifteen or older because the statute allows for a would-be enticer to be convicted of the crime of Enticement of a Child when there is no child but rather a "peace officer masquerading as a minor."

■■■ We must first begin with the language of the statute itself to see if it provides a clear answer as to the question at hand.

In interpreting statutes, this Court ascertains the intent of the legislature from the plain and ordinary language used and, if possible, gives effect to that

intent. In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense. This Court may also "review the earlier versions of the law, or examine the whole act ..., or consider the problem that the statute was enacted to remedy" to discern legislative intent.

*Hayes v. Price,* 313 S.W.3d 645, 654 (Mo. banc 2010) (internal citations omitted). The plain language of the crime of Enticement of a Child unequivocally requires that the person enticed be less than fifteen years old. *See* Section 566.151.1. The State, however, argues that Section 566.151.2 suggests that the legislature intended to create an exception when there is no child under the age of fifteen to create criminal liability when "the other person [is] a peace officer masquerading as a minor." Section 566.151.2 states "[i]t is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor."

A "peace officer" is defined under Missouri law in 590.010(3). Nowhere does that definition include a college intern volunteering part time for a sheriff's department, as was the decoy in this case. Therefore, Section 556.151.2 is of no relevance to this matter, and we need not reach the issue of the application of this provision to a case where a peace officer was in fact the person being "enticed."

■ Section 566.151.3 prescribes an identical range of penalties for both "[e]nticement of a child" and "an attempt to commit enticement of a child." *See* Section 566.151.3. While imprecisely written, context and prior usage indicate that when a person is caught enticing someone he or she believes is a child but who happens to be a police officer or other person masquerading as a child, he is guilty of attempted enticement of a child. This interpretation is supported by numerous cases with facts analogous to the instant case where a sting operation catches a would-be enticer of a child. *See e.g., State v. Pribble,* 285 S.W.3d 310 (Mo. banc 2009); *State v. Ward,* 235 S.W.3d 71 (Mo.App. S.D. 2007); *State v. Wadsworth,* 203 S.W.3d 825 (Mo.App. S.D.2006); *State v. Scott,* 238 S.W.3d 236 (Mo.App. W.D.2007)(per curiam); *State v. Sears,* 298 S.W.3d 561 (Mo. App. E.D.2009). This is also recognized in previous editions of the MAI in the notes on use to the verdict director for Enticement of a Child, MAI–CR3d 320.37 (2005 supp.). The notes stated "[i]f the person alleged to have been contacted by the defendant was a police officer masquerading as a minor, it may be possible to submit attempted enticement of a child." *See* MAI–CR 320.37 (2005 supp.).[5]

Had the legislature wanted to make enticing a person masquerading as a child fall under the same crime as in fact enticing a child, they could have done so by defining the crime accordingly. This they have not done.[6] Instead, in 2006, the leg-

---

**5.** The current iteration of the MAI–CR3d has deleted this language about the attempt instruction in association with an officer masquerading as a minor in the notes on use and explicitly included a separate Attempted Enticement of a Child instruction that was not previously explicitly set forth. *See* MAI–CR3d 320.37.2. However, the new Attempted Enticement instruction fails to address in the instruction itself or in the notes on use the proper instruction to utilize when there is no

child victim but a police officer masquerading as a minor.

**6.** The Southern District of this Court has recently agreed with the State's argument in interpreting a similar statutory provision under Section 566.083.3 in the case of *State v. Hall;* however, in the case at bar, the statute clearly does not apply as the decoy was not a peace officer. 321 S.W.3d 453 (Mo.App. S.D. 2010). We would acknowledge the concurring opinion of Judge Scott that the legisla-

islature amended Section 566.151.3 to create the same statutory penalty range for both enticement of a child and attempted enticement of a child. *See* H.B. 1698 93d Gen. Assem.2d Reg. Sess. (Mo 2006). Prior to 2006, enticement of a child was a class C felony and attempted enticement of a child was a class D felony. *See* Section 566.151 (2000). As amended, currently enticement of a child and attempted enticement of a child are both "a felony for which the authorized term of imprisonment shall be not less than five years and not more than thirty years." *See* Section 566.151.3. The Legislature's alteration of the statutory penalties for attempted enticement of a child to be identical to the completed crime of enticement of a child does not suggest the intent to classify the offence of offenders caught in a sting operation as identical to those whom actually complete the offense.[7] However, as previously pointed out, we don't have to reach that issue under the facts of the present case.

The evidence at trial clearly showed that the person enticed was a twenty-five year old female intern posing as a child. The Verdict Director for Count I read as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between June 6, 2006 and June 12, 2006, in the County of

Buchanan, State of Missouri, the defendant solicited a person defendant believed to be less than fifteen years of age, by suggesting they meet in person, and

Second, that the defendant did so for the purpose of engaging in sexual contact with a person defendant believed to be less than fifteen years of age, and

Third, that at the time, the defendant believed that the person he was chatting with via the internet was less than fifteen years of age, and

Fourth, that the defendant knew or was aware that *the person defendant solicited via the internet was less than fifteen years of age,* and

Fifth, that the defendant was twenty-one years of age or older, then you will find the defendant guilty under Count I of enticement of a child.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(Emphasis added.)

 There is no factual support anywhere in the record from which the jury could have found paragraph Fourth as is set forth above. Therefore, there was insufficient evidence in the record to support convicting Davies of enticement of a child under the statute and the instructions submitted to the jury. This conviction was in error. This error, however, does not demand that Davies's be discharged:

[When] a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those ele-

---

ture should consider amending the statute to clearly set forth its intent in denying this "affirmative defense."

**7.** It is unclear why the State would choose to proceed under the questionable charge of en-

ticement of a child under these facts, when there is clear case law that would support the attempted enticement of a child charge, and the attempt charge carries the identical penalty.

ments to enter the ill-fated conviction on the greater offense.

*State v. Payne,* 250 S.W.3d 815, 821 (Mo. App. W.D.2008) (quoting *State v. O'Brien,* 857 S.W.2d 212, 220 (Mo. banc 1993)). "An attempt is a lesser included offense of the completed offense." *State v. Messa,* 914 S.W.2d 53, 54 (Mo.App. W.D.1996).

 To convict Davies of attempted enticement of a child, the State had to prove beyond a reasonable doubt that (1) Davies was 21 years or older; (2) he communicated with someone he believed to be under the age of fifteen years old; (3) with the specific purpose of enticing, soliciting, coaxing, persuading, or luring her to engage in sexual conduct; (4) Davies committed an act which constituted a substantial step toward the commission of that offense. *See State v. Wadsworth,* 203 S.W.3d 825, 832–33 (Mo.App. S.D.2006) ("The only requirements for a charge of attempting to entice a child [are] that defendant's purpose was to commit the underlying offense and that defendant took a substantial step toward its commission."). Certainly Davies's driving to the cemetery to meet the alleged minor following the content of their on-line chats would be substantial evidence to establish the "substantial step" element of attempt. *Id.* at 832–33.

 The verdict director, submitted to the jury under Count I, explicitly required the jury to find each of the elements above, except that it failed to submit to the jury the element that Davies committed an act that was a substantial step toward the commission of the offense. This is cured, however, in that the jury explicitly found that Davies committed the requisite substantial step under Counts II and III for attempted statutory sodomy. "In determining whether an instruction or omission of an instruction was prejudicial, all of the given instructions must be read and con-

sidered together." *State v. Boyington,* 544 S.W.2d 300, 304 (Mo.App.1976) (citing *State v. Sallee,* 436 S.W.2d 246, 252 (Mo. 1969)).

Counts II and III required the jury to find that Davies contacted his intended victim, went to their agreed destination point and that "such conduct was a substantial step toward the commission of the offense of Statutory Sodomy." Attempted enticement of a child only requires the jury to find that the defendant took a substantial step to "persuade[ ], solicit[ ], coax[ ], entice[ ], or lure[ ] whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct." Because the jury found Davies committed the actions necessary to constitute a substantial step toward actually committing statutory sodomy by arranging a meeting with the victim and arriving at the proposed destination, this necessarily means his actions were also sufficient to support a finding that he committed a substantial step to corroborate his attempt to entice a child. Therefore, reading the instructions together, failure to explicitly require the jury to find a substantial step in connection with the attempted enticement of a child charge was not prejudicial. *See e.g., State v. Cooper,* 712 S.W.2d 27, 30 (Mo.App. E.D.1986) (finding no error for failure to submit to the jury whether Appellant's escape was facilitated by the use of a deadly or dangerous weapon because the jury found Appellant guilty of armed criminal action in effecting his escape which, under the instruction, meant the jury necessarily found the escape was committed using dangerous instrument) (citing *State v. Boggs,* 634 S.W.2d 447, 455 (Mo. banc 1982)).

While it was improper to convict Davies of enticement of a child under the facts of

this case, it was not improper to convict him of attempted enticement of a child. Point One is granted in part.

In Point Two, Davies claims the verdict director submitted to the jury on the charge of Enticement of a Child was defective in that it did not conform to MAI–CR3d 320.37.1. Counsel is required to make specific objections to allegedly erroneous jury instructions to preserve the matter for appeal. Rule 28.03.[8] Davies did not object to the jury instruction at trial and, therefore, requests that this court evaluate the claim under plain error review.

Rule 30.20 grants us authority to consider "plain errors affecting substantial rights . . . when [we find] that manifest injustice or miscarriage of justice has resulted" from the error. Under plain error review, we must first examine the record to determine whether or not the appellant's claim is one that facially shows grounds for believing that an error resulted in manifest injustice to him. *State v. D.W.N.*, 290 S.W.3d 814, 817 (Mo.App. W.D.2009). If this review establishes grounds for believing that an error occurred and that the error resulted in manifest injustice, then we review the record to determine whether or not the error actually resulted in manifest injustice. *Id.* In the absence of such a determination, we decline to exercise our discretion to review for plain error under Rule 30.20. *Id.* We use this rule sparingly and will not use it to review every alleged trial error that has not been properly preserved for review. *Id.* 'Plain error is evident, obvious, and clear error.' " *Id.* (quotation omitted).

*State v. Bowman*, 311 S.W.3d 341, 348 (Mo.App. W.D.2010). "It is well-estab-lished law that instructional error rarely rises to the level of plain error." *Id.*

Davies's primary objection to the verdict director is its language indicating that Davies only had to believe that the victim was less than fifteen years of age and not that the victim was in fact less than fifteen years old. This point is now moot because, as discussed above, the verdict director submitted was sufficient in this regard, when read with the other instructions, to find Davies guilty of attempted enticement of a child, which does not require a victim that is actually less than fifteen years old.

To prove attempted enticement of a child, the State had to prove beyond a reasonable doubt the following elements: (1) Davies was 21 years or older; (2) he communicated with someone he believed to be under the age of fifteen years old; (3) with the specific purpose of enticing, soliciting, coaxing, persuading, or luring her to engage in sexual conduct; (4) Davies committed an act which constituted a substantial step toward the commission of that offense. *See Wadsworth*, 203 S.W.3d at 832–33 ("The only requirements for a charge of attempting to entice a child [are] that defendant's purpose was to commit the underlying offense and that defendant took a substantial step toward its commission."). Although the language was not exact, each of the above elements was explicitly contained in the verdict director submitted to the jury except for the substantial step element. However, as discussed previously, because the jury found that Davies's conduct in arranging a meeting with his proposed victim and arriving at the meeting point was a substantial step toward the commission of statutory sodomy, we conclude that these same actions constituted a substantial step toward the commission of the crime of attempted en-

8. All citations to court rules are to the Missouri Supreme Court Rules (2010).

ticement of a child. Here, all the acts required for Davies to commit the offense were completed. The only reason this is an attempt crime rather than the completed crime of enticement is because there was no child but a decoy. Accordingly, in this case, under these facts, there was no error in the verdict director that was submitted to the jury which resulted in manifest injustice to Davies for a conviction of attempted enticement of a child.

Davies mentions two additional minor deviations from the MAI instructions for which he claims error. He complains that the Fourth paragraph deviated from the MAI instructions in that the MAI provides for the following language: "Fourth, that [1] the defendant (knew) (or) (was aware) that *[name of victim]* was less than (fourteen) (fifteen) years of age." MAI–CR 320.37.1. He failed to object to this portion of the instruction, so plain error review also applies. The actual instruction given was the following: "Fourth, that the defendant knew or was aware that the person solicited via the internet was less than fifteen years of age ." As previously discussed, it is not necessary that there actually be a victim that is less than fifteen years of age for the crime of attempted enticement of a child, and so, of course, the offender need not know there is such a victim. Accordingly, it was not necessary or proper to include paragraph Fourth in the verdict director.

■■■■ "On claims of instructional error, '[a]n appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant.'" *State v. Forrest,* 183 S.W.3d 218, 229 (Mo. 2006) (quoting *State v. Deck,* 994 S.W.2d 527, 543 (Mo. banc 1999)). " 'Prejudice exists when the Appellant demonstrates that in the absence of such error a reasonable probability exists that the verdict would have been different.'" *State v.*

*Davis,* 203 S.W.3d 796, 798 (Mo.App. W.D. 2006) (quoting *State v. Edberg,* 185 S.W.3d 290, 293 (Mo.App.2006)). While the language of the Verdict Director was error, the deviation in the fourth paragraph was harmless in that the fourth paragraph was unnecessary for a conviction of attempted enticement of a child.

■■■■ Davies also complains that the second paragraph in Instruction 9 deviated from the MAI by using the term "sexual contact" rather than "sexual conduct." This is also subject to plain error review because he failed to object at trial. Section 566.010 defines "sexual conduct" as "sexual intercourse, deviate sexual intercourse or sexual contact." Therefore, "sexual contact" is merely a subset of "sexual conduct" and the State, by using the more narrow term, has only increased its burden. Accordingly, Davies has not demonstrated an error that provides grounds for this court to believe a manifest injustice has occurred to him when the State has merely increased its own burden. *See State v. Kilmartin,* 904 S.W.2d 370, 375 (Mo.App. W.D.1995)("Not only were the missing elements not contested, the state assumed a significantly heavier burden in asserting that [Appellant] had used forcible compulsion and met that burden. We, therefore, do not discern manifest injustice; thus, we do not grant [Appellant] relief pursuant to Rule 30.20.").

Once again, while it was improper to convict Davies of enticement of a child under the jury instructions of this case, it was not improper to convict him of attempted enticement of a child. Point Two is granted in part.

■■■■ In Point Three, Davies argues that the trial court erred in denying his Motion for Judgment of Acquittal on Count I for the offense of Enticement of a Child because the Fourth Amended Infor-

mation charging the offense was defective and insufficient as a matter of law because it omitted the statutory element of the offense that the person enticed was underage. He argues this deprived him of his due process rights under the Fourteenth Amendment not to be convicted of a crime for which he was not charged, to notice of the charges against him, and his right to be acquitted unless the evidence establishes proof of every element of the offense beyond a reasonable doubt.

Davies raises this objection for the first time after his conviction. As such:

An information or indictment will be deemed insufficient, where the issue is raised for the first time after a verdict or judgment, "only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced.

*State v. Williams*, 126 S.W.3d 377, 380 (Mo. banc 2004) (quoting *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992)).

A defendant is only entitled to relief based on a post-trial claim that the information is insufficient if the defendant demonstrates actual prejudice. A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense. *Id.* at 381 (citing *State v. Baker*, 103 S.W.3d 711, 722 (Mo. banc 2003)); Rule 23.11.

 Davies claims that Count I of the charging document was defective in that it stated that Davies "solicited sexual contact ... with a person defendant be-lieved to be less than fifteen years of age." As previously discussed, the State charged Davies with enticement of a child rather than attempted enticement of a child. However, the notice to Davies here was sufficient, in that he was put on notice in the charging document that he was charged with enticement of a child. Attempted enticement of a child is a lesser-included offense of enticement of a child. *Messa*, 914 S.W.2d at 54 ("An attempt is a lesser included offense of the completed offense.") A person can be convicted of a lesser-included offense of the crime actually charged because he is placed sufficiently on notice of the allegations against him. *See Rupert v. State*, 250 S.W.3d 442, 446 (Mo.App. E.D.2008) (citing *Parkhurst*, 845 S.W.2d at 35) ("It is true that a person cannot be convicted of a crime with which the person was not charged unless it is a lesser-included offense of a charged offense"); *State v. Hayes*, 88 S.W.3d 47, 55 (Mo.App. W.D.2002) ("A defendant may be convicted of any lesser offense necessarily included in an indictment or information."). Accordingly, Davis has not shown how the State's incorrect classification of the charge as enticement of a child instead of attempted enticement of a child has prejudiced him. "The primary purpose of an information is to give defendant sufficient notice of the charge to allow adequate preparation of a defense and avoid retrial on the same charges in case of acquittal." *State v. Taylor*, 929 S.W.2d 209, 218 (Mo. banc 1996).

The only prejudice Davies claims is that "[i]f the state had properly charged appellant with enticement of a child in the fourth amended information and had submitted a verdict director that conformed with MAI–CR3d for the enticement of a child Count, then Mr. Davies would have had an airtight defense because the person allegedly enticed was over the age of

fifteen." As discussed previously, notice to the defendant that he is charged with a crime also puts him on notice for lesser-included offenses as well. *See Rupert,* 250 S.W.3d at 446. First, one's belief that his interpretation of the law entitles him to succeed on the merits has no bearing on whether the information was sufficient to apprise the defendant of the charges against him. Second, although the State classified the charged crime as enticement rather than attempted enticement, the information contained the necessary elements to charge the defendant with attempt. Davies's defense was that he *believed* he was corresponding with someone over the age of eighteen, a defense to either a completed enticement or an attempted enticement charge. Davies has not demonstrated and the Court cannot see how the State's misclassification of the offense as completed rather than attempted has prejudiced Davies in such a way that he either did not know with what crime he was being charged or was hurt in his ability to prepare his defense.

Point Three is denied.

In Point Four, Davies argues the evidence adduced at trial was insufficient to support his conviction in Counts II and III for attempted statutory sodomy.

"When a defendant challenges the sufficiency of the evidence to support a conviction, our review is limited to 'a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'" *Thompson,* 314 S.W.3d at 410 (quoting *Karl,* 270 S.W.3d at 515). "We accept as true all evidence favorable to the State, including all favorable inferences drawn therefrom, and disregard all evidence and inferences to the contrary." *Id.* (citing *Karl,* 270 S.W.3d at 515). "'A jury may believe all, some or none of a witness'[s] testimony, and the jury must

resolve any contradictions or conflicts in that testimony.'" *Id.* (quoting *McMellen,* 872 S.W.2d at 510).

A person commits the offense of statutory sodomy when he has "deviate sexual intercourse" with a person under the age of fourteen. Section 566.062 RSMo 2006. "Deviate sexual intercourse" includes "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person." Section 566.010(1) RSMo2006. To establish an attempt of this offense, the state must show that (1) the defendant acted with the purpose to commit the underlying offense, and (2) he performed an act which was a substantial step toward completion of the offense. Section 564.011 RSMo 2006; *State v. Young,* 139 S.W.3d 194, 196 (Mo.App. W.D. 2004) (citing *State v. Withrow,* 8 S.W.3d 75, 78 (Mo. banc 1999)).

First, Davies argues the State failed to meet its burden to show that Davies's actions constituted a substantial step toward completion of the offense. A substantial step is "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1 RSMo 2006. "'What act will constitute a substantial step depends on the facts of the particular case.'" *Young,* 139 S.W.3d at 196 (quoting *State v. Bates,* 70 S.W.3d 532, 535 (Mo.App. W.D.2002)). The evidence adduced at trial showed that Davies arranged to meet "Jaime" at a cemetery. Davies arrived at the cemetery half an hour before the arranged meeting time in the car he had described to "Jaime." Davies admitted that he changed on-line profiles hoping that if he claimed to be seventeen years old, she might agree to meet him. The arresting officer testified that Davies drove slowly through the cemetery and passed the meeting place, then drove through a cul-de-sac where he turned

around. Davies was stopped as he came out of the cul-de-sac.

Davies cites the Missouri Supreme Court in *State ex rel. Verweire v. Moore*, 211 S.W.3d 89, 92 (Mo. banc 2006), for the proposition that a defendant who has retreated before committing the completed offense is not guilty of an attempt of that offense. In *Verweire*, the Missouri Supreme Court held that the evidence was insufficient to convict the petitioner of first degree assault because his retreat from the encounter negated the necessary specific intent to cause serious physical injury. 211 S.W.3d at 92. In *Verweire*, it was undisputed that the petitioner retreated. *Id.* Here, however, the evidence is less clear. Davies claims the evidence showed he was leaving the proposed meeting place before the encounter. However, a reasonable juror could have concluded from the evidence that this was not the case. This Court, along with others, has repeatedly held that "arranging a meeting place for a sexual encounter and arriving there at the prearranged time are sufficient to constitute a substantial step in furtherance of a sex crime against a minor." *Young*, 139 S.W.3d at 198. It was not an unreasonable determination by the jury that Davies's actions, following his on-line conversation with "Jamie," constituted a substantial step as to be corroborative of his criminal intent.

■■■ Davies also argues that the State failed to meets its burden of proof that he acted with the purpose to commit two separate acts of statutory sodomy. He argues "the state did not show that Mr. Davies intended any act more specific than oral sex." Specifically, he argues that the State did not demonstrate that Davies's purpose was to perform both oral sex on "Jaime" and have "Jaime" perform oral sex on him. At trial the chat transcripts between Davies and "Jaime" were intro-

duced. On the day of the encounter, Davies, under the assumed persona of saintjoe—guy64506, told "Jaime" "well, if you want me to be your teacher and show you how to have sex, I am willing." "Jaime" replied, "like what," to which Davies responded, in graphic terms, that he would teach her how to perform oral sex on a man and that he would perform oral sex on her. Following this conversation, under his other online persona civil200077, Davies asked "Jaime" whether she was going to perform oral sex on saintjoe—guy64506 and whether she would let him perform oral sex on her. He encouraged her to allow his other on-line alter ego to perform both sex acts. Taking as true all evidence favorable to the State and inferences therefrom, a reasonable juror could have concluded beyond a reasonable doubt that Davies had the specific purpose to commit two separate acts of statutory sodomy.

Point Four is denied.

In Point Five, Davies argues the trial court erred in allowing the State to file, over his objection, a Fourth Amended Information after the close of defendant's evidence because the Information charged new and different offenses, which denied Davies his due process rights to a full and fair opportunity to mount an effective defense.

■■■ A trial court's decision to allow the amendment of a charging document is reviewed under an abuse of discretion standard. *State v. Seeler*, 316 S.W.3d 920, 925 (Mo. banc 2010) (citing *State v. Smith*, 242 S.W.3d 735, 742 (Mo.App. S.D.2007)). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." *State v. Ward*, 242 S.W.3d 698, 704

(Mo. banc 2008) (citing *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49 (Mo. banc 2006)).

Before the Information was amended on the last day of trial (Fourth Amended Information), Davies was charged with two identical counts of attempted statutory sodomy alleging that Davies intended to engage in "deviate sexual intercourse" with the intended victim. Each count was identical and read as follows:

The Prosecuting Attorney of the County of Buchanan, State of Missouri, upon information and belief, charges that the defendant, in violation of 566.062, RSMo, committed the felony of attempted statutory sodomy in the first degree, punishable upon conviction under Section 566.062, RSMo, in that on or about June 12, 2006, in the County of Buchanan, State of Missouri, the defendant suggested via the internet that he and a person whom defendant believed to be less than fourteen years of age meet in person to engage in deviate sexual intercourse, and such conduct was a substantial step toward the commission of the crime of statutory sodomy in the first degree and such conduct was done for the purpose of committing such statutory sodomy in the first degree.

Neither prior to or during trial did Davies raise any objection to the sufficiency of the charges under these two counts, and he failed to file for a Bill of Particulars as authorized by Rule 23.04.

After the close of Davies's evidence, the trial court pointed out to the State that it had two identical charges with nothing to distinguish one from the other. It was only then that the State requested leave to amend the information to distinguish the two charges of attempted statutory sodomy.[9] Count II was amended to specify that the charge was for the intended conduct of Davies placing his mouth on the victim's vagina and Count III specified the charge was for the intended act of Davies placing his penis in the victim's mouth. Davies claims that these amendments were additional or different charges that were prejudicial to his ability to mount a defense.

■■■■■■ Rule 23.08 allows the state to amend the information "at any time before verdict or finding if: (a) No additional or different offense is charged, and (b) A defendant's substantial rights are not thereby prejudiced." First, Davies claims the amended charges were additional or different charges. We disagree. The test for whether an amended charge is additional or different is clear. "To determine whether an amended information charges a new or different offense, courts inquire whether the elements of the two offenses are different." *State v. Smith*, 242 S.W.3d 735, 742 (Mo.App. S.D.2007) (citing *State v. McKeehan*, 894 S.W.2d 216, 222 (Mo.App. S.D.1995)).

Both before and after the Fourth Amended Information, Davies was charged with two counts of attempted statutory sodomy in the first degree. First degree statutory sodomy is defined as having "deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062. "Deviate sexual intercourse" is defined as:

any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act

---

9. One would hope that after having previously amended the charges three times that the State might have figured this out on its own without having to be prodded by the trial court to do its job properly. This case is a shining example of the problems caused for the trial court and the appellate courts when a prosecutor refuses to pay attention to the detail necessary to properly prepare and present the State's case.

involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

Section 566.010(1). The elements of the charges prior to and after the amendment were the same. The State had to prove Davies attempted to (1) have deviate sexual intercourse (2) with another person less than fourteen years of age. All that was amended was the manner in which the State was alleging Davies violated the statute.

In *State v. Smith*, the Southern District of this court addressed whether, after the close of defendant's evidence, the state's amendment of the information changing the underlying felony for a charge of armed criminal action from tampering to second-degree assault constituted an additional or different offense.[10] *Smith*, 242 S.W.3d at 742. The court said no, " '[w]here a statute creates an offense that can be committed by alternate methods, an amendment merely changing the method by which the offense was committed does not charge a different offense.' " *Id.* (quoting *State v. Folson*, 197 S.W.3d 658, 661 (Mo.App. W.D.2006)). Here, the charges were merely amended to specify the method by which the offenses were committed. Accordingly, no additional or different offense was charged.

██ This does not end our inquiry, however; now we must consider whether Davies's substantial rights were prejudiced by the amendment. "The test for determining prejudice is whether the planned defense to the original charge still would be available after the amendment and wheth-

er the defendant's evidence would be applicable before and after the amendment." *Seeler*, 316 S.W.3d 920, 926 (Mo. banc 2010) (citing *State v. Taylor*, 375 S.W.2d 58, 63 (Mo.1964); *State v. McGinness*, 215 S.W.3d 322, 324 (Mo.App. E.D.2007)). Davies has not demonstrated that he was prejudiced by the amendment. Davies's defense at trial had nothing to do with contesting the actual acts charged in the Information but, rather, that he believed "Jaime" was not a minor. As Davies recounts in his appellate brief, he testified, "in a nutshell," that he believed that Ms Schellenberger ("Jaime") was over eighteen due to her responses in the chats and that he and she were 'role-playing,' a common practice in chat rooms." Accordingly, Davies's planned defense was both available before and after the amendment, and the evidence he presented for his defense was applicable before and after the amendment. Therefore, Davies's substantial rights were not prejudiced. Because the State charged neither an additional nor different offense, and the amendment did not prejudice Davies's substantial rights, his point must fail.

Point Five is denied.

In Point Six, Davies argues the trial court erred when it allowed into evidence at trial testimony from Davies's wife regarding communications between Davies and his wife, which Davies argues were marital communications and, therefore, privileged. *See* Section 546.260.

██ "A wife may testify against her defendant husband in a criminal action at her option, provided she does not disclose any confidential communications." *State v. Turner*, 716 S.W.2d 462, 466 (Mo.App.

10. The elements of armed criminal action are "1) commission of a felony 2) by, with, or through the use, assistance or aid of a danger-ous instrument or deadly weapon." *Smith*, 242 S.W.3d 735, 742 (Mo.App. S.D.2007).

E.D.1986) (citing Section 546.260). "Communications are deemed confidential when exchanged between husband and wife in private." *Id.* (citing *State v. Montgomery*, 571 S.W.2d 784, 787 (Mo.App.1978)). " '[T]he party claiming a privilege must show it is applicable.' " *Id.* (quoting *State v. Schupp*, 677 S.W.2d 909, 912 (Mo.App. E.D.1984)).

██ To begin, Davies never specifies the exact communications that he contends were confidential but rather cites to his objections to his wife's testimony in its entirety. From his argument, it seems Davies objected to his wife's testimony concerning two separate conversations she had with Davies over the phone while he was in police custody. In his brief, Davies assumes that the communications at issue were confidential. Davies writes in a footnote that "[t]here can be no dispute that Mrs. Davies' testimony involved confidential marital communications because these conversations took place in private while the couple was alone." Davies does not cite to the record to establish these conversations were conducted in private. The State argued against Davies's motion to suppress his wife's testimony: (1) that an exception to the privilege was met because Davies's was being prosecuted under chapter 566,[11] and (2) that the communications were not confidential because the communication in question occurred while Davies was in the presence of third persons.

██ Although the trial court found the first exception applicable and ruled as such, it is unnecessary to address the propriety of that ruling because, even if it was erroneous, Davies had to establish that the communications were conducted in private for the privilege to apply. *See e.g.*, *Tur-*

*ner*, 716 S.W.2d at 466–67. Davies never testified that he was alone when he made the phone calls to his wife from the booking station, and there was evidence to suggest the contrary. His wife testified that the call she received from her husband at the booking station was from a number she did not recognize, which contradicted Davies's argument at the suppression hearing that he made the call from his personal cell phone and supported the State's argument that the call was made from the booking station with third parties present. Because Davies failed to present any evidence that these conversations were indeed conducted in private, an essential element to establishing the privilege he claims, his point must fail.

Point Six is denied.

██ In Point Seven, Davies argues the trial court erred when it allowed Davies's wife to testify that Davies never denied the crime to her, because there was no evidence adduced at trial that an incriminating statement was made by his wife in Davies's presence that would trigger the tacit admission rule.

The trial court has broad discretion to admit or exclude evidence at trial. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). " 'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000) (citation omitted). The trial court's evidentiary ruling will be affirmed "unless there is a sub-

---

**11.** In order for the exception to marital privilege under 546.260.2 dealing with criminal prosecutions under Chapter 566 to apply, the State must show that the alleged victim was under the age of eighteen. In this case, as was previously pointed out the "victim" was a twenty-six year old decoy and was not under the age of eighteen.

stantial or glaring injustice." *Romeo v. Jones*, 144 S.W.3d 324, 332 (Mo.App. 2004). Moreover, we review the trial court's ruling for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived [the defendant] of a fair trial. *State v. Johnson*, 245 S.W.3d 288, 292 (Mo.App. W.D. 2008).

*State v. Rios*, 314 S.W.3d 414, 420 (Mo. App. W.D.2010).

▆▆▆ The tacit admission rule provides that evidence of a failure to respond or acquiescence to an inculpatory statement may be used as evidence against the defendant when three criteria are satisfied. *See State v. Case*, 140 S.W.3d 80, 85 (Mo.App. W.D.2004); *State v. Gilmore*, 22 S.W.3d 712, 718 (Mo.App. W.D.1999). First, the inculpatory statement must be "made in the presence and hearing of the accused." *Case*, 140 S.W.3d at 85. Second, the inculpatory statement must be "sufficiently direct, as would naturally call for a reply." *Id.* Third, the inculpatory statement cannot have been made "at a judicial proceeding, or while the accused was in custody or under arrest." *Id.*

▆▆▆ The State asked Wife at trial, "At any point in time that you had any conversation with Jeff Davies about the reason he was arrested, did he ever tell you that he thought that person was over the age of 18?" and "Did [Davies] ever say he'd been wrongly accused?" Wife answered "No" to both questions.[12] Davies then objected to the questions. The State argues that Davies did not object to the foundation of the questions but objected on self-incrimination grounds, and therefore, this should be reviewed under plain error. Although Davies's counsel never specifically said he was objecting to the foundation of the

questions, he did argue that Davies had no obligation to say anything and that this was an impermissible burden to place on him. This objection at trial, in addition to Davies's addressing the issue in his Motion for Judgment of Acquittal, New Trial, and in the Alternative Reduction of Sentence, and in his appellate brief were sufficient to preserve the error for appellate review. *See State v. Scott*, 278 S.W.3d 208, 212 (Mo.App. W.D.2009) (citing *State v. Chambers*, 234 S.W.3d 501, 512 (Mo.App. E.D. 2007)).

▆▆▆ The State concedes that Davies's wife did not testify as to any explicit inculpatory statements to which one would expect a reply, the basis of the tacit admission rule. Instead, the State argues that from the "conversations" Davies had with his wife about "the reason [Defendant was arrested]," "it may be inferred that the statements were direct and called for a reply." The State provides no authority for this proposition, and it is one we cannot adopt. The tacit admission rule is a narrow one, and that some incriminating statement be made that naturally requires a response is a *sine qua non* to trigger the rule. Lack of a response is then offered as " 'acquiescence in its truth' " or " 'indicative as a consciousness of guilt.' " *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975) (quoting 29 AM.JUR.2d *Evidence* § 638). Expanding the rule to apply to "conversations" in which one would expect a defendant to at some point deny legal responsibility would broaden the rule impermissibly far. We deem silence, as a passive activity, to be less reliable than affirmative statements. *See e.g., Creager v. Chilson*, 453 S.W.2d 941, 943 (Mo.1970) ("[A] tacit admission by reason of silence is considered to be weak in probative force."). Accordingly, the tacit admission

---

12. It is unclear how these questions or the answers thereto were in any way relevant to the case at bar, but this is not the objection made or the issue briefed by the parties.

rule has narrow instances in which silence can be used against the defendant. *See e.g., Keim v. Blackburn,* 280 S.W. 1046, 1048 (Mo.1926) ("[U]nder the weight of general authority evidence of [a tacit admission] is so weak in probative force that it is rarely ever admitted. The circumstance must point clearly to the necessity for a reply before it can be admitted at all."); *Whitley v. Whitley,* 778 S.W.2d 233, 237 (Mo.App. W.D.1989) ("[T]he general rule [is] that courts should consider adoptive admissions 'as dangerous and to be received with caution.' "). We decline to expand that rule under these facts. Certainly any person charged with a crime who has consulted with an attorney will be told not to discuss the case with any person and therefore will remain silent under circumstances where they otherwise might deny culpability. The admission of his wife's testimony that Davies never denied committing the crime nor denied that he believed the person enticed was over the age of eighteen was error.

■ Having concluded that the admission of his wife's testimony regarding these issues was error, we must now determine whether the admission of that evidence was prejudicial. *See Rios,* 314 S.W.3d at 420. Davies argues that the admission of this evidence was prejudicial because "it had the effect of rebutting appellant's theory of defense to the charge that he believed the person he was chatting with online was over eighteen years of age."

■ "There is no prejudice to a defendant when allegedly improper evidence was merely cumulative to other evidence admitted without objection establishing the same facts." *State v. Nichols,* 200 S.W.3d 115, 120 (Mo.App. W.D.2006) (citing *State v. Simms,* 131 S.W.3d 811, 817 (Mo.App. W.D.2004)). Davies's brother-in-law, Ryan Boggs, testified to a conversation he overheard between Davies and his wife upon Davies's return to his home after he was released from police custody. Boggs testified that he heard her say to Davies, "Jeff, you got caught with a 12–year–old." And without hesitation, Jeff said, "[Wife], she was 13." This evidence, admitted without objection, establishes by inference the same facts that were admitted from the trial court's improper tacit admission evidence: (1) Davies did not argue he was wrongfully accused, and (2) he did not claim that he believed the person enticed was over the age of eighteen. Therefore, the improper evidence was merely cumulative of evidence that was admitted at trial. Further " '[w]here the presumption of prejudice from the erroneous admission of evidence is overcome by the strength of the overwhelming evidence of guilt, reversal is not mandated.' " *State v. Johnson,* 245 S.W.3d 288, 292 (Mo.App. W.D.2008) (quoting *State v. Beal,* 966 S.W.2d 9, 14 (Mo.App. W.D.1997)); *see also State v. Simmons,* 944 S.W.2d 165, 178 (Mo. banc 1997); *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997).

This is a simple case of a man getting caught by police in a sting operation. All the interactions between law enforcement and Davies were recorded and entered into evidence before the court. The chat transcripts strongly indicate that Davies thought the person with whom he was corresponding was a child. Also, Davies's attempt to complete the crime by showing up at the meeting place where the sexual conduct was to occur and his fanciful "excuse" of only showing up at the site to check to see if the tombstones in the cemetery were all upright or flat and then suggesting he was there only so he could warn "Jaime's" parents of what she was doing strains credulity. Davies admitted that he changed his profile to show an age of seventeen because he thought that

would make it more likely that "Jamie" would meet him. Finally, Davies wrote a confession in his own handwriting in which he apologized for contacting "Jaime," he learned she was thirteen years of age, he arrived at the cemetery, and he intended to have oral sex with her if she consented. Given the wealth of evidence showing that Davies indeed attempted to entice a person who he believed to be thirteen years of age, his wife's improperly admitted statements about Davies's failure to deny having committed the crime of enticement of a child was not so prejudicial that it deprived Davies of a fair trial.

Point Seven is denied.

## Remedy

We next turn to the appropriate remedy for the error in Points I and II.

 As this Court recently pointed out in *State v. Neal*, 328 S.W.3d 374 (Mo.App. W.D.2010), "the appellate remedy should not exceed the scope of the wrong." As was addressed above, Davies could not have been convicted of the crime of enticement of a child under the facts and jury instructions in this case. However, he could be convicted of the lesser included offense of attempted enticement of a child under the facts and jury instructions in this case. Also, as was pointed out above, the range of punishment for attempted enticement of a child is the same as the range of punishment for enticement of a child. Therefore, our reversal of Davies's conviction for enticement of a child does not, in this case, mandate his discharge. "When a conviction is overturned for want of sufficient evidence, we may enter a conviction for a lesser included offense if the evidence was sufficient to prove each element of that offense, and the trier of fact was required to find those same elements in order to convict for the greater offense."

*State v. Boyd*, 91 S.W.3d 727, 734 (Mo.App. S.D.2002).

Accordingly, we reverse the conviction for enticement of a child, and we enter a conviction for the lesser included offense of attempted enticement of a child. *See Woolford v. State*, 58 S.W.3d 87, 90 (Mo. App. E.D.2001). While our normal practice would be to remand the case to the trial court for resentencing, it is unnecessary to do so in the unique circumstances of this case. This is so because the range of punishment for enticement of a child and attempted enticement of a child is identical, and is established by the same statutory provision, § 566.151.3. The trial court has already determined the appropriate sentence pursuant to that particular statutory provision and these particular facts, and, therefore, no jurisprudential purpose would be served by remand.

## Conclusion

Davies's conviction of one count of enticement of a child is reversed, and a judgment of conviction of one count of attempted enticement of a child is hereby entered; in all other respects the judgment and sentence of the trial court are affirmed.

All concur.